**UNITED STATES of America, Appellee,**

v.

**Conrad WILLIAMS and Wilbert McKenzie, Defendants,**

**Conrad Williams, Defendant–Appellant.**

**No. 880, Dockets 90–1496, 90–1497.**

United States Court of Appeals, Second Circuit.

Argued April 2, 1991.

Decided June 19, 1991.

Casey Donovan, New York City, for defendant-appellant.

Henry J. DePippo, Asst. U.S. Atty. (Otto B. Obermaier, U.S. Atty., S.D.N.Y., Daniel C. Richman, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before LUMBARD, WINTER and WALKER, Circuit Judges.

WINTER, Circuit Judge:

Conrad Williams appeals from his conviction by a jury for assaulting a federal officer in violation of 18 U.S.C. § 111 (1988), use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) (1988), and conspiracy to steal government funds in violation of 18 U.S.C. § 371 (1988). Williams claims that his rights under the confrontation clause of the Sixth Amendment were violated when testimony concerning a confession by his codefendant,

Wilbert McKenzie, was admitted at their joint trial. McKenzie's confession was redacted and references to Williams were replaced by words such as "another guy," or similar language. However, Williams's own confession, which was also before the jury, interlocked with that of McKenzie in such detail that the jury could easily have concluded that Williams was the other "guy" referred to in McKenzie's confession. Our decisions allow a codefendant's confession to be admitted with a proper limiting instruction where redaction replaces a reference to the defendant with a neutral pronoun. The fact that other evidence identifies the defendant as the coperpetrator mentioned in the codefendant's confession does not affect its admissibility so long as the confession, viewed in isolation, does not implicate the defendant. We therefore affirm.

## BACKGROUND

The evidence established that Williams agreed to sell two and one-half kilograms of cocaine to Freddy Diaz, a government informant, for $60,000. On the appointed day, Williams picked up McKenzie, who was waiting on the street, and, after telling Diaz to follow, drove to a remote area where Williams and McKenzie got out of their car. As Diaz approached, Williams pointed a gun at him and demanded the money. Diaz then activated a beeper device that alerted surveilling agents. As the agents converged on the scene, Williams attempted to flee. Agent Kenneth Feldman testified that Williams turned, faced him, and began to raise the hand in which Williams held his gun. Feldman then shouted "police" and fired his weapon repeatedly at Williams. Williams fell to the ground, and the agents disarmed and handcuffed him.

After Williams was taken to a hospital and treated for gunshot wounds, he told Agent John Welsh that he had never intended to sell cocaine but had intended to steal the money from Diaz with the help of McKenzie. The following day, McKenzie told the agents that he had agreed to help Williams steal the money.

Williams and McKenzie were charged with conspiracy to steal government property, attempted murder of a federal agent, assault on a federal agent, and use of a firearm during a crime of violence. Prior to trial, Williams moved for a severance on the ground that the government planned to introduce McKenzie's statement at their joint trial in violation of the rule in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In response, the government prepared redacted versions of Williams's and McKenzie's statements in which references to the other defendant were replaced with the words "another guy" or a similar neutral reference. Judge Keenan ruled that these redactions satisfied the *Bruton* rule.

The case was reassigned for trial before Judge Duffy and a jury and began on May 15, 1990. At the close of the evidence, he granted both defendants' motions to dismiss count one of the indictment, the attempted murder charge. Williams was found guilty by the jury on the three remaining counts and was sentenced to 90 months incarceration. McKenzie, who was acquitted of assaulting a federal officer and use of a firearm in connection with a crime of violence but convicted of conspiracy to steal government property, was sentenced to 18 months incarceration.

## DISCUSSION

Williams's principal claim is that the district court erred in allowing Welsh to testify concerning the redacted statement of his codefendant, McKenzie, because that statement interlocked with Williams's own confession. We disagree.

In *Bruton*, the Court held that the introduction of a codefendant's hearsay confession implicating the defendant violated the defendant's right of confrontation even when a limiting instruction was given. The Court reasoned that the prejudicial impact of such a confession was so great that a jury could not be expected to disregard it when considering the evidence against the defendant. The broad right enunciated in *Bruton* has since been limited by the Court. In *Richardson v. Marsh*, 481 U.S.

200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), the Court held that use of a codefendant's hearsay confession does not violate the confrontation clause where a proper limiting instruction is given and the confession is redacted to eliminate any reference to his or her existence. *Id.* at 211, 107 S.Ct. at 1709. However, *Richardson* expressly reserved decision on the question of the admissibility of a confession where the redaction replaces the defendant's name with a neutral pronoun. *Id.* In such a case, of course, the existence of another perpetrator is revealed to the jury, and the chances that the jury will be able to identify the defendant as that other perpetrator are enhanced. *Richardson* noted that the codefendant's confession in that case "was not incriminating on its face, and became so only when linked with evidence introduced later at trial (the defendant's own testimony)." 481 U.S. at 208, 107 S.Ct. at 1707 (footnote omitted). The Court reasoned that "[w]here the necessity of such linkage is involved, it is a less valid generalization that the jury will not likely obey the instruction to disregard the evidence." *Id.*

■ Since *Richardson*, we have on several occasions admitted redacted confessions in which names of codefendants were replaced by neutral pronouns and "where the statement standing alone does not otherwise connect co-defendants to the crimes." *See United States v. Tutino*, 883 F.2d 1125, 1135 (2d Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990); *see also United States v. Benitez*, 920 F.2d 1080, 1087 (2d Cir.1990); *United States v. Smith*, 918 F.2d 1032, 1038 (2d Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1086, 112 L.Ed.2d 1191 (1991); *United States v. Alvarado*, 882 F.2d 645, 652 (2d Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1114, 107 L.Ed.2d 1021 (1990). These decisions have uniformly held that the appropriate analysis to be used when applying the *Bruton* rule requires that we view the redacted confession in isolation from the other evidence introduced at trial. If the confession, when so viewed, does not incriminate the defen-

dant, then it may be admitted with a proper limiting instruction even though other evidence in the case indicates that the neutral pronoun is in fact a reference to the defendant. This analysis is adopted directly from *Richardson* itself, and the principal extension of *Richardson* by our decisions is that they allow redacted confessions to refer to accomplices with neutral pronouns.

In the instant matter, McKenzie's redacted confession does not incriminate Williams when viewed in isolation from other evidence. Agent Welsh testified that McKenzie had stated that:

> ... he met this guy, this guy said that he had met this guy named Freddy, that Freddy had shown him a lot of money and that he intended to rip this guy Freddy off of his money, would you go for the ride, and he responded by saying yes, I'll go for the ride.

> He also said that once he was in the car and these guys were following him, that he was just standing around and he got arrested.

Nothing in this testimony implicated Williams, and the court instructed the jury that McKenzie's statement was not to be considered against Williams.

■ Viewed in light of the other evidence, particularly Williams's own confession, one would quickly conclude that the neutral pronoun in McKenzie's statement referred to Williams. Welsh testified concerning Williams's statement as follows:

> What he said was that he met a guy named Freddy on the 14th, that Freddy had shown him a lot of money, that he never had the two and a half kilograms that Freddy wanted for $21,000, that he had gone to look for another guy and that he couldn't find this guy. He had gone to look for the other guy in order to rip this guy Freddy off. He couldn't find that guy. When he had returned to where he left Freddy, Freddy was gone.

> .   .   .   .   .

> He said that on the day, the 15th, he had discussions with this guy Freddy again. Freddy said that he still had the money [for] the two and a half kilograms and did he still want it. He said that— let me think—that he met Freddy again

and this other guy that he didn't know was with Freddy.

> At this point he was looking for that same guy that he couldn't find the night before again in order to rip this guy Freddy off of his money. He found that guy. He explained that he wanted to rob this guy Freddy of his money. This guy said that he agreed and he said he would go for the ride.

The interlocking of the confessions thus all but insured that a jury *could* identify the person referred to in McKenzie's confession as Williams. Each statement referred to a plan to "go for a ride" in a car in order to steal "a lot of money" from a victim named "Freddy" who followed the car. Nevertheless, a jury *would* identify Williams as the other "guy" in McKenzie's confession only if it disregarded the limiting instructions given by the district court. As noted, *Richardson* stated that where linkage to other evidence is necessary to connect the defendant to the crime described in a codefendant's confession, the likelihood that a jury will disregard such a limiting instruction is less than in a case such as *Bruton*, in which the codefendant's confession directly and expressly implicated the defendant. Admission of McKenzie's testimony was thus not error.

■ We have examined appellant's other arguments and conclude they are meritless. Williams argues that his confession was involuntary. A district court's finding that a defendant made a knowing and voluntary waiver of his *Miranda* rights "must be upheld 'if any reasonable view of the evidence supports it,' and 'any specific findings of fact made after a hearing are binding unless clearly erroneous.'" *United States v. Tutino*, 883 F.2d 1125, 1138 (2d Cir.1989) (quoting *United States v. Hall*, 724 F.2d 1055, 1060 (2d Cir.1983), and *United States v. Kiendra*, 663 F.2d 349, 351 (1st Cir.1981)), *cert. denied*, — U.S. —, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990). The district court heard testimony from the agent who took the statement from Williams. According to that testimony, Williams was alert, unmedicated, and informed of his rights at the time he made his statement. Although Williams's affidavit disclaims any recollection of making a

voluntary statement, it does not directly controvert the agent's testimony. It was thus well within the discretion of the district court to credit the agent's testimony and discount the vague disclaimer in the affidavit.

We also reject Williams's contention that the district court erred in denying him a downward adjustment for acceptance of responsibility. His acceptance of responsibility related to only a portion of the conduct for which he was convicted and came well after that conviction. Moreover, because McKenzie was convicted only on the conspiracy charge and did accept full responsibility for the crime, no unwarranted disparity between McKenzie's and Williams's respective sentences exists. We therefore affirm.