966 F.2d 1454
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Matthew HAYHOW, Defendant-Appellant.
 No. 91-3990.
 United States Court of Appeals, Sixth Circuit.
 May 29, 1992.
 
 Before RALPH B. GUY, JR., BOGGS and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant, Matthew Hayhow, was convicted of bank robbery, conspiracy to commit bank robbery, and carrying a firearm during and in relation to a bank robbery.[1] On appeal, Hayhow argues that the admission at trial of a statement of a codefendant, Christopher Newton, violated the Confrontation Clause of the Sixth Amendment. He also argues that there was insufficient evidence to sustain the conviction on the two firearms charges.
 
 
 2
 Upon a review of the record, we conclude that there was no Confrontation Clause violation[2] and that the evidence overwhelmingly supports the firearms charges. Accordingly, we affirm.
 
 I.
 
 3
 On August 10, 1990, a branch of the Society Bank in Columbus, Ohio, was robbed at gunpoint by a white male. On August 24, 1990, a branch of Bank One was robbed at gunpoint by two white males. Both robberies were recorded by video surveillance cameras. In both robberies, the robber(s) wore jeans, jackets, caps, and a bandana over the lower portion of the face.
 
 
 4
 The second robbery turned into something of a disaster for the robbers. The bank manager followed them out to the parking lot and saw them drive away in a 1979 brown Chevrolet Chevette. He immediately called the police and gave them this information. The robbers also had been given dye-packs as part of the money taken. The packs exploded shortly after the robbery, causing the robbers to abandon both the money and the car. Newton's fingerprints were found in the car, which had just been purchased. The former owner of the car identified Newton as the purchaser and also stated that Newton was with a person who had tattoos.
 
 
 5
 Since Newton was the getaway driver, he was not identified by bank employees; however, defendant Hayhow was identified. Two employees of the Society Bank identified him from a photo line-up and at trial. The Bank One manager, who followed the robbers to their car, identified Hayhow. An FBI informant, who knew Hayhow, identified him as one of the two robbers in the Bank One surveillance film. Another witness identified a photo of Hayhow showing a grim reaper tattoo on his left arm.
 
 
 6
 Hayhow also was implicated by an employee of a shooting range as a person who came to the range to shoot with a semi-automatic handgun similar to the one described by bank witnesses. Hayhow came to the range with John Reid, who was implicated by an informant witness as the other white male in the surveillance film taken during the Bank One robbery.
 
 II.
 The Confrontation Clause Issue
 
 7
 At trial, neither Hayhow nor Newton testified. The government called Joey Hager as a witness, who testified that in early September 1990 Newton told him about the robberies, including how "they" had to pull over and abandon the car. He also was reminded that he told the grand jury that "they" also had to leave the money. In addition, during cross-examination, Newton's counsel asked Hager, "When you told the grand jury that they did this and they did that, could Chris have been talking about somebody else doing it?" Hager replied, "Yes." Hayhow's attorney moved for a mistrial after this testimony.
 
 
 8
 Hayhow's counsel also sought to distance his client from testimony anticipated from government witness Tom Anderson by unsuccessfully moving for a severance. Anderson was called to testify about an incriminating conversation he had with Newton. In a voir dire outside the presence of the jury, Anderson was instructed to say only what Newton told him that Newton did and not to use other names or the word "they." However, during Anderson's testimony before the jury, the word "they" was used three times, and the prosecutor used it at least once.
 
 
 9
 At the conclusion of Anderson's testimony, Hayhow's counsel moved for a mistrial and a limiting instruction. The court denied the mistrial motion, but gave a very complete limiting instruction specifically relating to both Hager's and Anderson's testimony and explaining that the testimony could be considered only as it related to defendant Newton.
 
 
 10
 In claiming that Hager's and Anderson's testimony violated his rights under the Confrontation Clause, Hayhow relies on Bruton v. United States, 391 U.S. 123 (1968), and Richardson v. Marsh, 481 U.S. 200 (1987). Although both of these cases are relevant, neither case decides directly nor by implication the question of whether the use of the word "they" under the circumstances here was an error requiring reversal.
 
 
 11
 In Bruton, the Supreme Court ruled that a defendant is deprived of his Sixth Amendment confrontation right when incriminated by the introduction of a non-testifying codefendant's confession at their joint trial. A violation is said to occur when the codefendant's statement "expressly implicates" the other defendant. The Supreme Court revisited this rule in Richardson, and indicated that the Bruton exception was a narrow one. The Richardson Court refined the Bruton rule by stating that Bruton applied to "facially incriminating" confessions, noting that the confession there " 'expressly implicat[ed] the defendant as an accomplice' " and thus "would prove 'powerfully incriminating.' " Richardson, 481 U.S. at 207, 208 (quoting Bruton, 481 U.S. at 135). The Court in Richardson went on to distinguish the situation where the incriminating impact arose only through linkage with other trial evidence.
 
 
 12
 Where the necessity of such linkage is involved, it is a less valid generalization that the jury will not likely obey the instruction to disregard the evidence.... In short, while it may not always be simple for the members of a jury to obey the instruction that they disregard an incriminating inference, there does not exist the overwhelming probability of their inability to do so that is the foundation of Bruton's exception to the general rule.
 
 
 13
 Richardson, 481 U.S. at 208.
 
 
 14
 Since Richardson, at least four circuits have addressed directly the issue of the use of pronouns, as opposed to names, in a codefnedant's statement offered at a joint trial. The case most directly on point here is United States v. Williams, 936 F.2d 698 (2nd Cir.1991), where the court concluded that, if the confession viewed in isolation "does not incriminate the defendant, then it may be admitted with a proper limiting instruction even though other evidence in the case indicates that the neutral pronoun is in fact a reference to the defendant." Id. at 700-01. Reaching a conclusion similar to that in Williams are the decisions in United States v. Washington, 952 F.2d 1402 (D.C.Cir.1991); United States v. Van Hemelryck, 945 F.2d 1493 (11th Cir.1991); and United States v. Briscoe, 896 F.2d 1476 (7th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 173 (1990).[3]
 
 
 15
 When the teachings of the decided cases are applied here, it appears clear that no Bruton violation occurred. Hayhow certainly was not implicated by necessary inference, nor was he convicted through necessary implication. This appears to be the type of situation anticipated in Richardson where an appropriately worded limiting instruction is the only remedy required.
 
 
 16
 We have stopped short of exhaustively analyzing this issue, since we conclude also that, assuming this to be a Bruton violation, any error was harmless beyond a reasonable doubt due to the strength of the other evidence implicating Hayhow. Schneble v. Florida, 405 U.S. 427 (1972).
 
 III.
 
 17
 The Sufficiency of the Evidence on the Gun Charge
 
 
 18
 Defendant's argument on this issue is limited essentially to a contention that the government was required to produce the weapon at trial and demonstrate its operability. It is clear that such requirement is not a necessary predicate to a conviction for a violation of 18 U.S.C. § 924(c). Several circuits have addressed this issue, and typical of their holdings is that reached in United States v. Buggs, 904 F.2d 1070 (7th Cir.1990). The Buggs court specifically held that the firearm need not be produced at trial, nor does it make a difference that witnesses did not have an opportunity to examine it closely.[4]
 
 
 19
 Apart from whatever threshold showing must be made when considered in the abstract, the evidence here clearly showed that the defendant was brandishing a firearm. At least eight witnesses testified that they saw the gun, thought it was real, and were intimidated. Additionally, the surveillance camera photos showed the robber(s) apparently holding firearms. Finally, there was the shooting range operator who saw the defendant with an automatic pistol. Ample evidence existed from which a jury could reasonably find that defendant violated the statute.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 There were two bank robbery counts, 18 U.S.C. § 2113(a) and (d), and two firearm counts, 18 U.S.C. § 924(c)
 
 
 [2]
 In the alternative, we conclude that, if the Confrontation Clause was violated, any error was harmless beyond a reasonable doubt
 
 
 [3]
 The cases from outside the Second Circuit are somewhat narrower in their holdings. They leave room for the conclusion that a Confrontation Clause violation may occur if the conclusion is compelled that the pronoun identifies the only other defendant
 
 
 [4]
 See also United States v. Parker, 801 F.2d 1383-85 (D.C.Cir.1986), cert. denied, 479 U.S. 1070 (1987), and United States v. Harris, 792 F.2d 866 (9th Cir.1986)