**UNITED STATES of America,**

v.

**Daniel MARTINEZ–MONTILLA, Julio Gerbacio–Linch, Jose Brito, Defendants.**

**No. 00 CR. 1123(DAB).**

United States District Court, S.D. New York.

March 16, 2001.

---

*ORDER*

BATTS, District Judge.

Defendants Martinez–Montilla, Gerbacio–Linch, and Brito are charged with participating in a conspiracy to distribute Methylenedioxymethamphetamine ("MDMA" or "Ecstasy"), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. Defendant Gerbacio–Linch, in a motion joined by Defendants Martinez–Montilla and Jose Brito[1], moves pursuant to Federal Rule of Criminal Procedure 14 for a trial separate from his co-defendants, based on claims that a joint trial will allegedly violate their rights under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).[2]

Defendant Gerbacio–Linch's counsel first raised the possibility of this motion at a pre-trial conference on December 18,

---

**1.** See Letter from Richard W. Brewster to Hon. Deborah A. Batts, dated January 26, 2001 ("Brewster Letter"); Letter from B. Alan Seidler to Hon. Deborah A. Batts, dated January 26, 2001 ("Seidler Letter").

**2.** At a Court hearing on March 13, 2001, counsel for Defendant Gerbacio–Linch withdrew all other suppression and discovery motions made in the original submission of January 25, 2001.

2001, at which point the Court instructed Defendant to work with the Government to determine whether redaction could cure any potential prejudice. (Tr. at 4.) The Government has submitted proposed redactions of the Defendants' post-arrest statements. (Def.'s Mem. Law Ex. E.) Nevertheless, Defendants argue that "no possible redaction could cure the overwhelming prejudice of these incriminating statements", thereby mandating a severance under Rule 14. (Def.'s Mem. Law. at 13.)

## I.  FACTUAL BACKGROUND

On October 3, 2000, Defendants Gerbacio–Linch, Martinez–Montilla, and Brito were arrested by Drug Enforcement Administration ("DEA") Agents pursuant to an investigation involving the cooperation of a confidential informant. (Govt.'s Mem. Law at 2.) Upon searching a car driven by Defendant Brito, once at the arrest scene and again at DEA headquarters, the Agents recovered approximately 3,000 purple-colored tablets which appeared to be ecstasy. (Govt.'s Mem. Law at 5.)

After their arrest, each of the Defendants were processed separately and gave varying statements to the Agents. (Govt.'s Mem. Law at 3.) According to the DEA report, Defendant Gerbacio–Linch stated, in sum and substance: that he had met with Defendant Martinez–Montilla earlier that day, that he was taken by Martinez–Montilla to the Bronx where they met a "Hispanic" male unknown to him, and that he did not have any knowledge of any drugs nor was he told by Martinez–Montilla that drugs were in the car. (Def.'s Mem. Law Ex. A ¶ 3.)

Another DEA report reflects that Defendant Martinez–Montilla declared that on October 3, 2000, Defendant Gerbacio–Linch picked him up in a car with a "Hispanic" male unknown to him to go shopping and that he had no knowledge of drugs in the car nor spoke to Defendant Gerbacio–Linch or the other male about it. (Def.'s Mem. Law Ex. C ¶ 2.)

After his arrest, Defendant Brito stated that earlier that day he was phoned by a friend Jose LNU, and was asked to help out two of Jose's friends who were in New York. (Def.'s Mem. Law Ex. D ¶ 3.) He further stated that Defendants Gerbacio–Linch and Martinez–Montilla showed up at his barber shop later that day and asked him to use his car which he knew was equipped with a hidden compartment. (Def.'s Mem. Law Ex. D ¶ 4.) He claimed the car actually belonged to a "Hispanic" woman who he knew as Maria LNU, but he was able to figure out how to operate the trap. (Def.'s Mem. Law Ex. D ¶ 4.) He stated that he later observed Martinez–Montilla put a bag into the trap and close it up, and that he was told by Defendants Martinez–Montilla and Gerbacio–Linch that he would be "financially taken care of" if he agreed to drive them to Queens, where they were ultimately arrested. (Def.'s Mem. Law Ex. D ¶¶ 4–6.)

The Government has submitted proposed redactions of the statements which replace the names of the Co–Defendants in each Defendant's statement with phrases such as "another male", "one of the males", and "the two males." (Def.'s Mem. Law Ex. E.)

## II.  DISCUSSION

### A.  Rule 14

Rule 14 of the Federal Rules of Criminal Procedure permits a District Court to sever the joinder of defendants in a single trial if prejudice would result. *See* Fed. R.Crim.P. 14. Given the strong policy in favor of joint trials delineated by the Supreme Court, however, defendants seeking severance have a difficult burden to meet,

particularly where less extreme remedies such as limiting instructions are available to cure any potential risk of prejudice. *See Zafiro v. United States,* 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) ("[A] district court should grant severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence...When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but...less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.").

Moreover, the Second Circuit has held that the presumption in favor of joint trials is particularly strong where the crime charged involves a "common scheme or plan" and defendants have been jointly indicted. *United States v. Girard,* 601 F.2d 69, 72 (2d Cir.1979); *see United States v. Cardascia,* 951 F.2d 474, 482–83 (2d Cir.1991)("Acknowledged in this policy is the inevitable tolerance of some slight prejudice to codefendants, which is deemed outweighed by the judicial economies resulting from the avoidance of duplicative trials.")

It is thus with this admonition that the Court considers Defendants' motion.

## B. *Bruton* Analysis

In *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court held that the introduction of a co-defendant's statement implicating the defendant in a joint trial violated the defendant's rights under the Confrontation Clause, even when a limiting instruction was given. However, the broad right delineated in *Bruton* has since been considerably circumscribed by the Supreme Court, which subsequently approved the admissibility of such an inculpating co-defendant statement where the statement is redacted to eliminate any reference to the defendant's existence. *See Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987).

The Second Circuit has gone even further to approve the use of neutral pronouns in redacted statements with a proper limiting instruction as sufficient to eliminate any potential *Bruton* problem. *See United States v. Tutino,* 883 F.2d 1125, 1135 (2d Cir.1989)("[A] redacted statement in which the names of co-defendants are replaced by neutral pronouns, with no indication to the jury that the original statement contained actual names, and where the statement standing alone does not otherwise connect co-defendants to the crimes, may be admitted without violating a co-defendant's *Bruton* rights."); *see also United States v. Williams,* 936 F.2d 698 (2d Cir.1991)("Since *Richardson,* we have on several occasions admitted redacted confessions in which names of co-defendants were replaced by neutral pronouns and where the statement standing alone does not otherwise connect co-defendants to the crimes."); *United States v. Benitez,* 920 F.2d 1080, 1087 (2d Cir.1990); *United States v. Alvarado,* 882 F.2d 645, 652 (2d Cir.1989).

The Second Circuit has further held that the *Bruton* rule is not violated even where the interlocking of the redacted statements with other evidence at trial could conclusively lead to the identification of the individual referred to through neutral pronouns as the co-defendant; thus, the redacted statements must be viewed in isolation from other evidence to determine whether it is incriminating on its face. *See Williams,* 936 F.2d at 700 (affirming admission of statement redacted to replace references to co-defendant with "another guy" or similar language with limiting in-

struction is deemed sufficient to dispel any *Bruton* problems); *see also United States v. Smith,* 198 F.3d 377, 385 (2d Cir.1999)(finding redacted statement admissible because it was not incriminating on its face, notwithstanding other evidence permitting jury to make inferences identifying co-Defendant).

Defendant Gerbacio–Linch argues that even after redaction, because Defendant Brito will be flanked by his Co–Defendants, "it will become obvious that [Brito] has implicated Gerbacio–Linch in hiring the car and offering to pay for Brito's services to deliver narcotics." (Def. Mem. Law at 14.) Defendant Brito argues that the inconsistencies that would be brought to light by admission of the three redacted statements would lead a jury to conclude that the Defendants are a "pack of liars". (Brewster Letter.)

The facts of the instant case, however, mirror those considered by the Second Circuit in *Williams.* Here, as in *Williams,* there exist interlocking statements, the most inculpatory of which is that by Defendant Brito, and which taken in light of other evidence likely to be introduced at trial all but insure that a jury *could* identify the persons referred to in Defendant Brito's statement as the co-Defendants Gerbacio–Linch and Martinez–Montilla. Nevertheless, as in *Williams,* the statements viewed as redacted do not facially incriminate the co-Defendants, and a jury would identify co-Defendants only if it disregarded a limiting instruction given by this Court. Pursuant to the doctrine developed in the Second Circuit under *Tutino* and *Williams* in such situations, then, no prejudice results where a limiting instruction is given and thus, severance is not warranted.

Defendant's reliance on the Supreme Court's most recent decision in *Gray v. Maryland,* 523 U.S. 185, 118 S.Ct. 1151,

140 L.Ed.2d 294 (1998), as mandating a different conclusion is misplaced. The *Gray* Court found a *Bruton* violation only where the redactions were facially obvious, that is, by leaving a blank space or inserting the word "deleted" in place of a particular individual's name. 523 U.S. at 192–93, 118 S.Ct. 1151. Unlike *Gray,* the proposed redactions in the instant matter do not replace names with a blank space or the word "delete". Nor do the statements include specific details about the co-Defendants such as any identifying physical characteristics.

Moreover, the *Gray* Court implicitly approved the use of neutral pronouns. *See id.* at 196, 118 S.Ct. 1151 (pointing out witness could have said "Me and a few other guys" instead of "Me, deleted, deleted, and a few other guys" to dispel any prejudice); *cf. Tutino,* 883 F.2d at 1135 (upholding admission of co-defendant's redacted statement that "he and others were involved"); *United States v. Alvarado,* 882 F.2d 645, 652 (2d Cir.1989)(upholding admission where redaction utilized the phrase "another person")

The Government's proposed redactions in the instant matter do not raise *Bruton* concerns per se; nevertheless, the redactions can be further tailored to mirror the language utilized in *Tutino* by referring to "two others" instead of "two males". The Government is directed to make its redactions gender neutral.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion for a severance is denied.

Parties shall appear before this Court for a pre-trial conference on April 9, 2001 at 11:00 AM. Time from the date of this Order to April 9, 2001 shall be excluded under the Speedy Trial Act, in that the Court concludes that, pursuant to 18

U.S.C. § 3161(h)(8)(A), the interest of justice is served by ordering such a continuance and outweighs the best interest of the Defendants' and the public in a speedy trial.

SO ORDERED.