# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00155-CR

**Eric Lee Trevino, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
## NO. 0984451, HONORABLE JON N. WISSER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Eric Lee Trevino and his codefendant Jose Guadalupe Posada guilty of aggravated assault and engaging in organized criminal activity by committing and conspiring to commit aggravated assault. *See* Tex. Pen. Code Ann. §§ 22.02, 71.02 (West Supp. 2004).[1] For appellant, the jury assessed prison terms of thirty-three and twenty years for the two organized crime offenses, and thirteen years for the assault. Appellant contends the evidence is legally and factually insufficient to sustain the organized crime convictions, and that the court erred by admitting in evidence a written statement given by Posada. We will overrule these contentions and affirm the judgments of conviction.

---

[1] Statutory amendments subsequent to the commission of the offenses are not relevant to this appeal.

*Facts*

**The Martinez shooting**

Ricky Martinez, Michael Ojeda, and Michael's sister Marie Lara were enrolled in Del Valle High School's summer program. On June 16, 1998, they left school at about 12:45 p.m. in Ojeda's maroon Volkswagen Jetta. Ojeda was driving, Lara sat in the passenger seat, and Martinez was in the rear seat. As they drove by a Circle K convenience store, Ojeda noticed several persons get into a white sedan and a gray pickup truck in the store's parking lot. The white sedan tried to pull out in front of Ojeda, but Ojeda passed it and turned north on farm road 973. The sedan and pickup truck followed him.

The pickup truck, which was occupied by two Hispanic males, passed the white sedan and then tried to pass Ojeda's Jetta. Ojeda was driving at speeds of 80 to 85 miles-per-hour to avoid being cut off. The truck pulled within five feet of Ojeda traveling in the southbound lane. Ojeda then heard a gunshot. His sister jumped into the back seat with Martinez. Ojeda slammed on the Jetta's brakes and the truck and sedan passed him. Ojeda noticed a sheriff's vehicle parked at a construction site near the intersection of farm roads 973 and 969. As he drove there to report what had happened, the sedan and pickup truck made U-turns and drove south on 973.

Martinez was bleeding and there was a bullet hole in the Jetta. Deputy Sheriff Kent Miller sent Ojeda across the highway to another deputy to call an ambulance. Miller left to pursue the gray truck, a description of which he received from Ojeda. Miller stopped the truck six or seven minutes later on highway 71. Codefendant Posada was the owner and driver of the truck, and appellant was the other occupant. Ojeda was brought to the scene of the stop, and he identified Posada's truck as the one involved in the shooting. Ojeda did not know Posada or appellant.

2

Other evidence showed that a bullet struck the rear of Ojeda's Jetta, passed through the trunk and rear seat back, and entered Martinez's back under the arm, where it lodged in his lower right chest area. A nine millimeter shell casing was found in the bed of Posada's pickup truck. The police later found a nine millimeter semiautomatic pistol lying in the grass beside farm road 973. Ballistics tests showed that this pistol fired the cartridge found in Posada's truck. Atomic absorption tests indicated that appellant had gunpowder residue on his right palm and that Posada had gunpowder residue on both hands. An expert testified that the presence of the residue indicated that the men had either fired a gun, handled a recently fired gun, or been in the immediate area when a gun was fired.

### The Midtown Kriminals

Detective Albert Bertrand of the Austin Police Department's gang unit testified regarding Austin's gang culture in general, and explained that the local gangs were often affiliated with national gangs such as the Crips, Bloods, Peoples's Nation, and Folks Nation. One street gang operating in Austin and Travis County was the Midtown Kriminals (MTK), which began in the Montopolis neighborhood. Bertrand stated that an Austin bar called Club Chaos was frequented by gang members.

Alejandro Ruiz testified that he had been a member of the Midtown Kriminals for three years. There were approximately thirty members in the gang, which he said was led by John Chavez. Other members included appellant, Posada, Guillermo Navarro, Jose Luis Gomez, Antonio Gomez, Javier Ruiz, and John Zuniga. The gang used the initials MTK and the Roman numeral XII. The latter referred to 12th Street in Austin, which the gang claimed as its turf. Ruiz said that the

3

members of MTK would fight any other gang that invaded this turf.  MTK's colors were green and beige.

Ruiz testified that he, Chavez, and Zuniga got into a fight with members of the Dukes, a rival gang, in the parking lot of Club Chaos.  He explained that the Dukes were affiliated with Folks Nation while MTK was affiliated with People's Nation.  Ruiz stated that the fight started when the Dukes began to "throw gang signs."  During the fight, Ruiz was stabbed in the arm and Zuniga was stabbed "all over his body."  Several months after this fight, Navarro told Ruiz that Santos Hernandez of the Dukes was the person who had stabbed him.  Ruiz reported this information to Chavez, who announced that he was ready "to get him."  Ruiz was still in school and asked Chavez to wait.  In June 1998, after Ruiz was expelled from school, Chavez told other MTK members, "Let's go get [Hernandez]."

Following Chavez's instructions, Ruiz drove his white 1990 Nissan Stanza to the Circle K store across from Del Valle High School at 11:30 a.m. on June 16, 1998.  His brother, Javier, was with him.  Chavez, the Gomez brothers, Zuniga, and David Granados (who Ruiz said was not a member of MTK) arrived at the store in Jose Gomez's white Pontiac Grand Am.  Minutes later, appellant and Posada arrived in Posada's pickup truck.  Appellant appeared to be anxious and asked, "When are we going to do this?"

Ruiz and the other MTK members believed that Santos Hernandez would be in a maroon automobile.  They had formulated a plan whereby Posada's truck, acting as the lead vehicle, and the two cars would "box in" the maroon car and cause it to stop.  According to Ruiz, he was to have a fist fight with Hernandez.  Ruiz stated that he wanted to hurt Hernandez even to the point of permanently disabling him.  The other MTK members would be his "back-up" in case Hernandez

4

tried to use a weapon. Ruiz did not see a gun during the preparations at the Circle K store. When the MTK members saw the maroon Jetta pass the Circle K, they got in their vehicles and followed. Ruiz's car was not able to keep up with the other vehicles and he did not witness the shooting.

Lee Gonzales and his sister, Melissa Gonzales, testified that on the night before the shooting Posada came to their house, displayed a semiautomatic pistol, and said he hoped to use it. Posada told Lee that his gang was trying to "get some guy, this Duke or whatever, for stabbing their homeboy or something in the park." Lee and Melissa identified the pistol found beside the road as resembling the pistol Posada showed him that night.

After the shooting, on the night of June 16, Posada telephoned Melissa. He told her that another member of the Midtown Kriminals gang was in the truck with him when he, Posada, shot someone he believed to be Santos Hernandez. Posada said the shooting occurred about 1:00 p.m. that day and that all the people participating were members of MTK. Posada said he had thrown the pistol into some bushes along the roadway.

Jose Luis Gomez testified that he was a former member of the Midtown Kriminals and had known appellant and Posada since childhood. Gomez said that he left MTK after his release from the Texas Youth Commission in 1997. He admitted, however, that he was present at the Circle K store on June 16. He corroborated Ruiz's description of the plan to stop the maroon car and for Ruiz to get into a fist fight with "somebody." Gomez denied chasing the maroon Jetta.

*Other MTK activities*

Alejandro Ruiz testified that persons seeking membership in MTK had to earn that right by fighting a gang member, a process called being "jumped in." Ruiz also described an

5

incident in which he and Navarro had a fist fight with members of another rival gang, Kriminal of Art, in the parking lot of Del Valle High School.

Gomez testified that on August 21, 1995, while still a member of MTK, he shot at several people at the Payless Store on Manor Road from a car driven by Posada. Gomez said that although his dispute was with a person in another gang, the fight was personal and not gang related. Austin Police Officer Donald Baker investigated the Payless shooting. He was told by Jose Arroyo that the driver of a blue Cadillac yelled at him and flashed a gang sign, then reached toward the center of the car. As Arroyo ran toward his own car, he heard gunshots. The Cadillac then drove away.

Austin Police Officer Arthur Arevalo testified about a 1997 incident in which shots were fired at an apartment complex on Patton Lane. During the course of his investigation, Arevalo interviewed appellant, whom he photographed wearing a green shirt. Appellant told Arevalo, "Nobody messes with my little brother." Arevalo also searched appellant's car and seized a baseball bat on which the initials MTK were written.

### Points of Error

#### Sufficiency of the Evidence

A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, he commits or conspires to commit one or more enumerated offenses, one of which is aggravated assault. Tex. Pen. Code Ann. § 71.02(a)(1) (West Supp. 2004). "'Combination' means three or more persons who collaborate in carrying on criminal activities." *Id*. § 71.01(a) (West 2003).

6

"'Criminal street gang' means three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities." *Id*. § 71.01(d). "'Conspires to commit' means that a person agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense and that person and one or more of them perform an overt act in pursuance of the agreement." *Id*. § 71.01(b).

Count I, paragraph one of the indictment alleged that appellant, Jose Posada, Daniel Granados, John Chavez, Jose Gomez, and Alejandro Ruiz, with the intent to establish, maintain, and participate in a combination, committed the offense of aggravated assault of Ricardo Martinez. Count I, paragraph two alleged that the same individuals, as members of a criminal street gang, committed the aggravated assault. Both theories of the offense were submitted to the jury in the alternative, and the jury returned a general verdict of guilt on count I.

Count IV, paragraph one alleged that the same individuals, with the intent to establish, maintain, and participate in a combination and in the profits of a combination, conspired to commit the aggravated assault. Count IV, paragraph two alleged that the same individuals, as members of a criminal street gang, conspired to commit the aggravated assault. Both theories of the offense were submitted to the jury in the alternative, and the jury returned a general verdict of guilt on count IV.

In six points of error, appellant contends the evidence is legally and factually insufficient to prove that he participated in a combination, criminal street gang, or conspiracy. In a legal sufficiency review, the question is whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Griffin v. State*,

7

614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981). A factual sufficiency review asks whether a neutral review of all the evidence, both for and against the finding of guilt, demonstrates that the proof of guilt is either so obviously weak or so greatly outweighed by contrary proof as to undermine confidence in the jury's determination. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

Proof that three or more persons agreed to jointly commit a single crime is not sufficient to prove a combination within the meaning of the organized crime statute. *Nguyen v. State*, 1 S.W.3d 694, 697 (Tex. Crim. App. 1999). Instead, the State must prove that the members of the group intended to work together in a continuing course of criminal activities. *Id*. This does not mean, however, that the State must prove the actual commission of other offenses by the alleged members of the combination. The intent to work together in a continuing course of criminal activities may be manifested by acts that are not in themselves criminal. *Id*. All that is required is proof that a combination existed and that the defendant committed or conspired to commit the enumerated offense in order to facilitate the combination. *Fee v. State*, 841 S.W.2d 392, 395 (Tex. Crim. App. 1992). It is unnecessary to prove continuous membership by the alleged members of the combination. Tex. Pen. Code Ann. § 71.01(a)(2) (West 2003).

Appellant concedes that the State proved his commission of the aggravated assault. To convict appellant on count I, paragraph one, the State was required to prove that when appellant assaulted Martinez, he intended to establish, maintain, or participate in a group of three or more persons who, in turn, intended to work together in a continuing course of criminal activities. The evidence shows that appellant and four of the other persons named in the indictment were members of the Midtown Kriminals, an organization considered by the police to be a street gang. MTK was shown to have an organizational structure, a recognized leader, meetings, and common symbols and

8

colors. It was also shown to have a formal initiation rite for new members, which required them to fight one or more current members. MTK claimed 12th Street as its turf and was prepared to fight other gangs in order to defend this turf. Members of MTK were linked by the evidence to three other assaultive acts: a fist fight with members of a rival gang at Del Valle High School, a drive-by shooting at the Payless Store, and another shooting on Patton Lane. Appellant was present at the latter location, was wearing MTK's colors and in possession of a baseball bat bearing the MTK initials, and told an officer that "nobody messes with my little brother." This evidence, when viewed in the light most favorable to the verdict, supports a finding beyond a reasonable doubt that when appellant assaulted Martinez, he was acting with the intent to participate in a combination of three or more persons who intended to collaborate in a continuing course of criminal activities.

Appellant does not separately argue his factual sufficiency claim. A neutral review of all the evidence does not persuade us that the proof that appellant intended to participate in a combination is either so obviously weak or so greatly outweighed by contrary proof as to undermine confidence in the jury's determination. Points of error two and four are overruled.

Appellant argues that the State failed to prove that he conspired to assault Martinez as alleged in count IV because there is no evidence he knew that any member of the alleged conspiracy had a firearm or intended to shoot Martinez. Use of a firearm is not, however, a necessary element of aggravated assault; the offense is also committed if the assault results in serious bodily injury. Tex. Pen. Code Ann. § 22.02(a)(1) (West Supp. 2004). The evidence shows that appellant and his companions planned to force the person they believed to be Santos Hernandez off the road, remove him from his car, and allow Alejandro Ruiz to beat him, even to the point of causing permanent disfigurement. *See* Tex. Pen. Code Ann. § 1.07(a)(46) (West Supp. 2004)

9

(defining serious bodily injury). Applying the standards of review previously discussed, this evidence was legally and factually sufficient to support a finding that appellant and the other persons named in the indictment agreed that they or one or more of them would commit an aggravated assault. Appellant does not challenge the sufficiency of the evidence to prove the commission of overt acts in pursuance of the agreement. We therefore hold that the evidence is legally and factually sufficient to support a finding that appellant conspired to commit aggravated assault. Points of error six and seven are overruled.

The evidence is legally and factually sufficient to support appellant's conviction for committing and conspiring to commit aggravated assault with the intent to participate in a combination, as alleged in count I, paragraph one and count IV, paragraph one. It is, therefore, unnecessary to decide if the evidence also supports a conviction on count I, paragraph two and count IV, paragraph two. *See Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). For this reason, we do not address points of error three and five, in which appellant contends the State failed to prove his participation in a criminal street gang.

### *Admission of Posada's statement*

Appellant's codefendant Jose Posada gave two written statements to law enforcement officers, in both of which he said that appellant was with him in the pickup truck when Martinez was shot. These statements were introduced in evidence after being edited to remove the references to appellant, and the jury was instructed by the court to consider the statements only in determining Posada's guilt. In his first point of error, appellant urges that the redactions from Posada's second

10

statement were not adequate and that the admission of the statement violated his constitutional right to confront the witnesses against him.

The second statement, as redacted, did not identify by name the person or persons in the pickup truck with Posada when the shot was fired. It was clear, however, that Posada was not alone. Posada said, "While we were following the maroon car I was messing with my radio and that is when I heard the gunshot. . . . I said, 'What the hell are you doing.' Both of our ears were ringing." Appellant argues that the jury could easily infer that Posada was here referring to appellant because all the witnesses agreed that Posada and appellant were alone in Posada's pickup truck.

A defendant's Sixth Amendment confrontation right is violated by the admission of a nontestifying codefendant's facially incriminating pretrial statement, even when the jury is instructed to consider the statement only against the codefendant. *Bruton v. United States*, 391 U.S. 123, 135-36 (1968). The Confrontation Clause is not violated, however, if the nontestifying codefendant's statement is edited to remove any reference to the other defendant and the jury is instructed not to consider the codefendant's confession in determining the other defendant's guilt. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). As long as the codefendant's redacted statement does not incriminate the other defendant on its face, the confrontation right is not violated even if other evidence links the defendant to the codefendant's redacted statement. *Id*. at 208-09. If the codefendant's redacted statement incriminates the other defendant only by inference, a proper limiting instruction is sufficient to avoid a Sixth Amendment violation. *Id*.

The appropriate analysis to be used when applying *Bruton* and *Richardson* is to view the codefendant's redacted confession in isolation from the other evidence introduced at trial. *United States v. Williams*, 936 F.2d 698, 700-01 (2d Cir. 1991). If the redacted confession, so viewed, does

11

not incriminate the defendant, it may be admitted with a proper limiting instruction even though other evidence in the case indicates that a neutral pronoun is in fact a reference to the defendant. *Id*. The challenged portion of Posada's redacted statement contained the pronouns "we," "you," and "our," but the statement did not expressly refer to or directly incriminate appellant. Although other evidence allowed the jury to infer that these pronouns referred to appellant, this inferential linkage did not violate *Bruton*. *See Wilson v. State*, 948 S.W.2d 21, 29-30 (Tex. App.—Eastland 1997, pet. ref'd). The court did not err by admitting Posada's redacted statement with a limiting instruction. Point of error one is overruled.

The judgments of conviction are affirmed.

_____

Mack Kidd, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed:   January 8, 2004

Do Not Publish

12