UNITED STATES of America,

v.

Darryl HENDERSON and Charod
Becton, Defendants.

No. 02 CR 451(RO).

United States District Court,
S.D. New York.

Aug. 3, 2006.

David M. Rody, Katherine A Lemire, Assistant United States Attorneys (Michael J. Garcia, U.S. Attorney, SDNY).

Avraham C. Moskowitz, Moskowitz & Book, LLP, New York City and Jeremy Schneider, Rothman Schneider, Soloway & Stern, New York City, for defendant Charod Becton.

Mark B. Gombiner and John J. Byrnes, Federal Defenders of New York Inc., New York City, for defendant Darryl Henderson.

## OPINION & ORDER

OWEN, District Judge.

Before me in this capital case are motions in limine of defendants Charod Becton and Darryl Henderson seeking (1) severance, and/or the preclusion of certain evidence; (2) a bill of particulars and other discovery. Recently before me was also defendants' motion to dismiss Count Ten of the Indictment, which was denied on the record at a hearing on July 24, 2006 for reasons set out more fully below. Defendants Becton and Henderson are charged in a 16-count superseding indictment with participating in a racketeering enterprise called "Murder Unit" and with committing several crimes in furtherance thereof, including a January 21, 2001 robbery, triple homicide, and attempted arson at 690 Gerard Avenue, Bronx, New York.

■ Joint trials "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts," *Richardson v. Marsh*, 481 U.S. 200, 210, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), and promote judicial economy, *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir.2003). Severance pursuant to Federal Rule of Criminal Procedure 14(a) is therefore disfavored as a waste of judicial resources and is warranted only if "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993).

The motions for severance stem from three statements by defendants: the post-arrest statements of Becton and of former co-defendant Julian Edwards, now deceased; and Henderson's pre-arrest statement. The Becton statement on its face is exculpatory as to Becton and inculpatory as to Henderson. In sum, the statement asserts that Becton was not involved in the crimes of January 21, 2001, but that Henderson confessed to Becton his commission of the crime after the fact. The government seeks to introduce a redacted version of Becton statement only against him as a false exculpation, and an inadvertent inculpation—in that it allegedly contains "information about [the crimes] only an insider would know"—against Becton, along with a limiting instruction that the statement is not to be considered against anyone but Becton. In a letter dated May 18, 2006, the government submitted a proposed redacted version of the Becton statement, which the government asserts is in conformity with *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) and its progeny. In this version, the names of defendants are replaced with neutral pronouns such as "the guy I know" and "the other guy." These redactions, the government asserts, avoid the Confrontation Clause problem posed by the statement of a co-defendant. Henderson moves to exclude Becton's statement, or, in the alternative, to sever on the grounds that the statement is not probative and, even in redacted form, is unfairly prejudicial to Henderson and violates his Sixth Amendment rights to confront witnesses against him.

While under *Bruton,* a co-defendant's confession that inculpates the defendant violates the defendant's Sixth Amendment confrontation rights, even with a limiting instruction that the confession only be considered against the co-defendant, in *Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), the Supreme Court held that redaction from the co-defendant's confession of any reference to the defendant eliminates the *Bruton* problem, but it expressed "no opinion on the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun." *Id.,* at 211, n. 5, 107 S.Ct. 1702. In *Gray v. Maryland,* 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998), the Court barred the use of redaction of "directly accusatory" statements by the obvious substitution of a name by a blank or the word "delete," because such redactions "facially incriminate" the defendant. *Id.,* at 196, 118 S.Ct. 1151.

In *United States v. Williams,* 936 F.2d 698 (2d Cir.1991), the Second Circuit held that the *Bruton* problem could be remedied by the substitution of neutral pronouns for the name of defendant, and that if the redacted confession, *by itself,* "does not incriminate the defendant, then it may be admitted with a proper limiting instruction even though other evidence in the case indicates that the neutral pronoun is in fact a reference to the defendant." *Id.,* at 701. Several post-*Gray* decisions recognize that *Williams* is consistent with the holding in *Gray. See, e.g., U.S. v. Barroso,* 108 F.Supp.2d 338, 347–48 (S.D.N.Y.2000); *U.S. v. Arbalaez,* No. 98 Cr. 941, 1999 WL 980172 (S.D.N.Y. Oct. 27, 1999).

■ The redaction here basically conforms to *Williams* and *Gray.* Through its use of neutral pronouns, and viewed in isolation, it does not facially incriminate Henderson. The inference required to conclude that "the guy" is Henderson is not one "that a jury ordinarily could make immediately, even were the [statement] the very first item introduced at trial." *Gray,* 523 U.S. at 196, 118 S.Ct. 1151.

■ The *Bruton* problem being solved, Becton's statement is arguably highly probative as to him in that it contains details about Becton's whereabouts and movements, the robbery, the victims of the killing, and other such pieces of information a jury could reasonably conclude would only be known by an insider to the crimes.[1] Accordingly, the probative value of the redacted statement outweighs any prejudicial effect. Given the strong policy reasons for a joint trial and the presumption that the jurors will follow a limiting instruction with regard to the well-redacted Becton statement, *see Richardson,* 481 U.S. at 200, 107 S.Ct. 1702, it is admissible in a joint trial.

■ The Edwards statement—inadmissible hearsay at the guilt phase of the trial, but admissible as mitigation evidence at the penalty phase—ascribes to Becton a lesser role in the killings and attempted arson than Henderson. Accordingly, Becton intends to introduce it at that phase, should he be declared guilty. The Edwards statement at any phase would be prejudicial to Henderson, let alone violate his confrontation rights. The government therefore proposes a sequential penalty phase, should this arise, so that the jury would first determine Henderson's sentence, and then Becton can offer the Edwards statement, if he is still so minded.

---

1. Becton contends that much of this was in the newspapers, but the government contends that what was in the newspapers was far short of this—and there is so far no showing that Becton ever read the reporting newspapers.

Becton, however, in moving to sever completely, objects to such a sequential penalty phase on the ground that he may be unfairly prejudiced by evidence Henderson proposes to introduce at his penalty phase—primarily,. Henderson's pre-arrest statement—which Becton would not be able to rebut when first introduced. In this statement, which consists of police interview notes, Henderson admits to going to a club with Edwards and Becton, but upon leaving he says he parted from them and denies any role in the robbery and murders. He also states: "You don't understand. I can't give these guy's [sic] up. They know where my family lives and where I live. They'll kill me. I have to stay a soldier. You won't get me to give them up." The interviewing officer added in a parenthetical: "This statement was in reference to [Becton] and [Edwards]." Becton argues that the statement is prejudicial to him, because it indicates that "Becton is a sociopathic killer." Becton Mem. at 19. The government also argues for exclusion contending that the Henderson statement is inadmissible hearsay and is otherwise of such minimal probative value and so highly prejudicial and unreliable that it should be excluded from the penalty phase.

Sequential penalty phases in a multidefendant capital trial, though not favored, have occurred, especially where one defendant has mitigating evidence of such force that it places his co-defendant at a unique disadvantage. *See, e.g., United States v. Catalan–Roman,* 376 F.Supp.2d 96 (D.Puerto Rico 2005). Sequential penalty phases also has the advantage of preserving a joint guilt phase, which promotes judicial economy and avoids the potential inequity of conflicting verdicts by using one jury; minimizing the risk that co-defendants "prosecute" one another at a joint penalty phase; providing defendants with an individualized determination of

sentence; and ensuring that the jury that determines guilt also determines sentence, 18 U.S.C. § 3593(b). *See U.S. v. Taylor,* 293 F.Supp.2d 884, 898–900 (N.D.Ind. 2003). On the other hand, sequential penalty phases always raise the *possibility* that the first-sentenced defendant will disparage the others and seek to make himself seem comparatively less culpable. The jury—cognizant of such a defendant's incentives and necessarily in such a situation having already determined that he is guilty of a capital offense—and therefore that his defense was without foundation— is unlikely to afford such evidence great weight, as against co-defendant Becton, especially with a proper limiting instruction, and of course, said co-defendant Becton will also have an opportunity to endeavor to rebut the evidence at his own penalty phase.

While reserving decision on the issue of whether the above-quoted portion of Henderson's pre-arrest statement is admissible at his penalty phase, I note that defendants point to no piece of evidence to be offered in Henderson's penalty phase that would be unusually prejudicial to Becton, with a proper limiting instruction. The government will offer evidence during the guilt phase of Becton's violent propensities and gang ties, which, should the jury convict, it likely will have taken into account. At this time, it appears therefore that much of what Henderson might allege against Becton would be duplicative of what will have been introduced at the guilt phase. The Edwards statement, however, is unique in its probative value, in that it goes well beyond a self-serving statement by one defendant against another. Because the statement contains admissions against interest by a declarant who committed suicide shortly after making it, the jury is likely to afford it great weight. Accordingly, it is an atypical piece of evi-

dence that is highly prejudicial as to Henderson, such that a limiting instruction may be insufficient to protect his rights. This problem is resolved, however, by keeping the Edwards statement from the jury until *after* the jury has concluded and determined the penalty phase against Henderson (assuming that is reached).

■ Count Ten of the superseding indictment charges that defendants attempted arson by "turn[ing] on the gas to the stove in the victims' apartment, while candles were lit inside the apartment, in an attempt to set fire to the apartment." The government intends to call witnesses who will testify that the oven door to the stove was open, all gas-flow dials were set to full with no flame to ignite the gas, a gas smell permeated the building, and candles were lit in the next room. Defendants moved to dismiss Count Ten on the ground that the government did not "preserve" the stove or "perform testing" on the stove, which prevents defendants from determining whether it was functioning properly. I denied this motion at oral argument for the reasons set forth below.

For defendants to have been deprived of the right to present a defense based on a claim of lost evidence, defendants must show beyond the settings of the stove itself (1) that the stove was in some way material and exculpatory; (2) that it was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means; (3) that the government acted in bad faith; and (3) that, if the motion is denied, the defendants will suffer an absence of fundamental fairness so egregious that it will prevent a fair trial. *See Buie v. Sullivan*, 923 F.2d 10, 11–12 (2d Cir.1990).

Defendants do not meet this test. To the police officers arriving at the murder scene on the night in question it was apparent that the stove itself was no more than a conduit for unlit gas to shortly reach the lit candles. They would not have concluded that the stove itself had "exculpatory value that was apparent before [it] was destroyed." *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). The only reasonable conclusion to draw from all this was that an ordinary kitchen stove—dangerously spewing unlit gas from all "burners" into an apartment with open candle flames and a grisly murder scene mere feet away—was an instrumentality of attempted arson. It follows that defendants have not shown any bad faith on the part the police, as "the presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed," which exculpatory value it did not have. *Arizona v. Youngblood*, 488 U.S. 51, 56 n. *, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). In any event, defendants will also have every opportunity to cross-examine the government's witnesses as to this, so fundamental fairness is not implicated.

Accordingly, in balancing the above concerns, I hold that the trial will be by a single jury, which will sit for sequential penalty phases if needed, with Henderson preceding Becton. Defendants' motion for a bill of particulars and other discovery is denied, as among the indictment, death notices, and voluminous other discovery, defendants have received all to which they are currently entitled.

So Ordered.