In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2136

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SUSAN M. MILLER,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 00 CR 29--Allen Sharp, Judge.

Argued November 5, 2001--Decided January 9, 2002


  Before COFFEY, ROVNER, and EVANS, Circuit
Judges.

  EVANS, Circuit Judge.  After an 8-day
trial, a jury convicted Susan Miller,
Dennis Weldy, and two corporate
defendants on 31 counts charging
healthcare billing fraud and making false
statements in Medicaid billings. The
frauds totaled over $8 million.

  Miller headed the billing departments
for Option Care of Northern Indiana and
Option First Health Care, the two
corporate defendants. Weldy owned Option
Care and he and Miller owned Option
First. Beginning in late 1996, Miller and
Weldy defrauded Indiana Medicaid by
submitting inflated billing claims for
prescriptions, fraudulent compound drug
claim forms, and fraudulent claims
adjustments.

  At trial, the government attempted to
introduce evidence that, about 2 weeks
before the trial began, Miller's ex-
husband, Tom Miller--who continued to
live with and was working for Miller--
threatened to "kick" Weldy's "ass when
this is all done with." The government
alleges that, at the time, Weldy was
considering pleading guilty and
cooperating with the prosecution against
Miller./1 The jury never heard the
threat evidence, however, because the
district court excluded it and instructed

the jury to disregard several questions leading up to it./2 Nonetheless, Miller moved for a mistrial, which the district court denied. Later in the trial, the prosecutor commented in the presence of the jury that the defendant had subpoena power and was capable of putting on a case./3 Based on these two events, Miller appeals.

We review for abuse of discretion the district court's denial of a mistrial motion. See United States v. Canino, 949 F.2d 928, 937 (7th Cir. 1991). We view that action deferentially because a trial judge is in the best position to determine whether an incident is serious enough to warrant the drastic step of declaring a mistrial. See id. We also review for abuse of discretion the district court's decision to allow a prosecutor's allegedly improper remarks to stand. See United States v. Lovelace, 123 F.3d 650, 654-55 (7th Cir. 1997).

Miller argues that in attempting to introduce the threat evidence the prosecution violated Federal Rules of Evidence 403 and 404(b). Rule 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by, among other things, the danger of unfair prejudice. Rule 404(b) provides that evidence of the defendant's other crimes, wrongs, or acts is not admissible to prove her character to show that she acted in conformity with that character trait on the occasion in question. Such evidence is admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident.

Here, the government argues that Tom Miller's threat against Weldy was admissible to show that Susan Miller was conscious of her guilt. Evidence that the defendant threatened a potential witness or a person cooperating with a government investigation is relevant to show the defendant's consciousness of guilt. See United States v. Thomas, 86 F.3d 647, 655 (7th Cir. 1996); United States v. Balzano, 916 F.2d 1273, 1281 (7th Cir. 1990). One of our sister circuits has held that threats made by a person connected with the defendant are also admissible for the same purpose. United States v. Gatto, 995 F.2d 449, 455 (3d

Cir. 1993). We think this is a sensible proposition.

Here, Tom Miller was connected with defendant Susan Miller. He lived with her, was once married to her, fathered her children, and worked for her at Option First (one of the corporate defendants). Thus, the threat was relevant to show that Susan Miller was conscious that Weldy's testimony--or potential cooperation with the prosecution-- could damage her case, and thus that she was conscious of her guilt. Therefore, the district court did not err in refusing to declare a mistrial because jurors had heard questions leading up to this evidence. Indeed, the district court erred on the side of caution in refusing to admit the threat evidence, giving Miller more protection than Rule 404(b) actually affords her.

Nor did Rule 403 bar the threat evidence. Again, we note that the jury did not actually hear the evidence. But even if the district court allowed the evidence to come in, the risk of unfair prejudice would not have outweighed its probative value. This is so because there was no risk of unfair prejudice. We dealt with an example of unfair prejudice in Dudley v. Duckworth, 854 F.2d 967, 972 (7th Cir. 1988). There, the prosecutor intimated that a prosecution witness was threatened not to testify but did not present any corroborating evidence of the threat or any evidence that the defendants were behind it. See id. at 969. Indeed, the prosecutor only established that the witness may have received a threat through this question: "Are you afraid for your girlfriend and your aunt if you testify?" Id. Although the prosecutor argued that evidence of the alleged threat was necessary to explain the witness' "nervousness," we rejected that explanation as pretext. See id. at 971. Miller's case is distinguishable. Here, the threat-maker's identity was no mystery. Additionally, the prosecutor's motive in attempting to introduce the threat evidence was not pretextual. It was a legitimate attempt to introduce probative evidence of Susan Miller's consciousness of guilt.

Miller also argues that the district court should have stricken the prosecutor's statement that the defendant

was able to subpoena witnesses and put on a case. Miller bases this argument on Griffin v. California, 380 U.S. 609, 615 (1965), which held that the Fifth Amendment forbids prosecutors from commenting directly on an accused's decision not to testify. We extended Griffin to hold that an indirect comment on the defendant's failure to testify also violates the Fifth Amendment if the remark was "manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." United States v. Butler, 71 F.3d 243, 254 (7th Cir. 1995).

As a preliminary matter, we note that Miller did testify. In fact, the prosecutor made the challenged comment while Miller was on the stand. Thus, we fail to see how the remark could have violated her Fifth Amendment right not to testify. Even had Miller chosen not to testify, however, the statement would not have violated the Fifth Amendment because it could not be construed as an unfair comment on the defendant's failure to testify. The prosecutor merely noted the defendant's subpoena power in response to an objection to a perfectly legitimate question--the prosecutor asked Miller whether Field Representative Kim Stovall, who allegedly directed Miller to bill Medicaid in a way contrary to Medicaid's manual, had testified. When Miller's attorney objected, the prosecutor noted that, like the prosecution, the defense had the power to subpoena witnesses. This was a correct statement of the law.

Nonetheless, Miller argues that the prosecutor's comment conflicted with the requirement that the prosecution carries the burden of proof. But as long as it is clear to jurors that the government carries the burden of proof, the prosecutor may tell the jury that a defendant has the power to subpoena witnesses. See United States v. Aldaco, 201 F.3d 979, 988 (7th Cir. 2000); United States v. Knox, 68 F.3d 990, 1000 (7th Cir. 1995); United States v. Sblendorio, 830 F.2d 1382, 1393 (7th Cir. 1987).

Here, it was immediately noted after the "subpoena power" comment that the government carried the burden of proof. Additionally, the district court instructed the jury that "[t]he

government has the burden of proving the guilt of the defendants beyond a reasonable doubt, and this burden remains on the government throughout the case." The court also instructed the jury, "The defendants are not required to prove their innocence or to produce any evidence." Id. We presume that juries follow instructions. See United States v. Clarke, 227 F.3d 874, 883 (7th Cir. 2000); United States v. Adeniji, 221 F.3d 1020, 1027 (7th Cir. 2000). Therefore, even assuming that the prosecutor's remark was somehow improper, the district court's jury instructions cured any possible impropriety. See also United States v. Carraway, 108 F.3d 745, 761 (7th Cir. 1997) (holding that district court's repeated instructions to jury not to consider coconspirators' guilty pleas as evidence against defendants cured impropriety of prosecutor mentioning the pleas during opening statement).

Finally, given that the two minor incidents about which Miller complains occurred during an 8-day trial in which the government presented substantial evidence of her guilt, these alleged errors, if they were ever to be considered as errors at all, would have to be viewed as no more than harmless.

AFFIRMED.

FOOTNOTES

/1 In support of this contention, the government cites trial transcript vol. 3, para. 147. No information regarding Weldy's potential cooperation with the prosecution appears on that page. An oblique reference to Weldy's potential testimony appears at transcript vol. 3, para.para. 141-42, where the prosecutor said, "[A] threat by one party to another party in a case--especially when that party can be a witness and may well be a witness--is obviously probative." This, by itself, is not very substantial evidence that Weldy was considering becoming a prosecution witness. Nor does the record contain a proposed plea agreement corroborating the government's contention. But Ms. Miller does not rebut the government's allegation, so we will assume that it is true.

/2 The prosecutor asked witness Dorinda Wright about the threat:

Q. All right. Now, have you spoken to Mr. Weldy in the last few weeks about a threat that he re-

ceived?

A. Yes, sir.

Q. Approximately when did Mr. Weldy tell you about this threat?

MR. VOYLES [Miller's attorney]: Judge, may we--

A. It's been a week or two ago. Maybe a little longer.

Q. What did Mr. Weldy tell you?

MR. VOYLES:  Objection, Your Honor. Can we approach the bench?

THE COURT:  No. I am going to excuse the jury on this one.

Tr. vol. 3 at para. 137.

/3 The prosecutor made this remark in response to an objection to his cross-examination of Miller. The prosecutor was asking Miller why she disregarded the Medicaid manual in preparing prescription billing forms:

Q. Who are these field representatives that told you contrary to the manual to bill in milligrams in that quantity box?

A. Kim Stovall.

Q. What's that again?

A. Kim Stovall was our provider rep in 1996 and 1997.

Q. And she told you to bill in milligrams?

A. Yes.

Q. Has she testified here?

A. No.

MR. THIROS [Weldy's attorney]:  Objection, Your Honor. That's improper, I think.

MR. SCHMID [Prosecutor]:  No, Your Honor. They have subpoena power just like the government. They can put on a case.

MR. VOYLES [Miller's attorney]: Wait a minute, Your Honor. That's certainly an inappropriate comment to make. That's contrary to the instructions.

MR. SCHMID:  Not at all, Your Honor.

THE COURT: Let's get on to something else in the interest of caution. It may be a close call. The burden here is on the government. There is no question about that.

MR. SCHMID: There is no question about that, but they have subpoena power.

Tr. vol. 7 at para.para. 81-82.