**UNITED STATES of America,**
**Plaintiff,**

v.

**Styles TAYLOR and Keon**
**Thomas, Defendants.**

**No. 2:01–CR–0073–AS.**

United States District Court,
N.D. Indiana,
Hammond Division.

Nov. 19, 2003.

Philip Craig Benson, U.S. Attorney's Office, Hammond, IN, for Plaintiff.

## ORDER

ALLEN SHARP, District Judge.

This matter comes before the Court on Defendant Keon Thomas' Motion for Severance [DE 300] and Motion to Sever Count Five [DE 301]. Defendant Styles Taylor has also moved to sever his trial from his co-defendant and to sever the felon in possession count by filing a Motion for Relief from Prejudicial Joinder [DE 291]. The Government responded to Taylor and Thomas' Motions in its Consolidated Response [DE 454]. The Court has considered the supplemental material filed by Defendants—Defendant Taylor's Supplemental Memorandum in Support of Motion for Relief from Prejudicial Joinder [DE 405] and Defendant Thomas' Reply to the Government's Consolidated Response [DE 466] as well as oral arguments presented at the October 8, 2003 hearing on Defendants' Motions.

## BACKGROUND

Defendants Thomas and Taylor are charged with various violations of federal law concerning a robbery and murder at the Firearms Unlimited Gun Shop located in Hammond, Indiana. Specifically, Taylor and Thomas are charged with conspiracy to commit robbery of a federally licensed firearms store and murder in violation of 18 U.S.C. §§ 1951 and 2 (Count 1); armed robbery in violation of 18 U.S.C. §§ 1951 and 2 (Count 2); the murder of Frank Freund in violation of 18 U.S.C. §§ 924(j), 924(c)(1) and 1951 and 2 (Count 3); and felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 2 (Counts 4, 5 and 6)[1]. In addition to Taylor and Thomas, the Superseding Indictment charged Damione Thomas and Adam Williams with involvement in the robbery and murder at Firearms Unlimited. Damione Thomas was charged with the conspiracy (Count 1), robbery (Count 2), and murder (Count 3). Adam Williams was charged with being an accessory after the fact (Count 7) and perjury before the Grand Jury (Count 8). Both Williams and Damione Thomas have entered into plea agreements with the Government in which they have pled guilty to certain charges and have agreed to cooperate with the Government if so requested.

Both Taylor and Thomas seek to be tried separately as well as severance of the felon in possession counts from the remaining counts they are each charged with in the Second Superseding Indictment. Neither Defendant claims that the joinder of defendants or counts in the Second Superseding Indictment is improper, rather they maintain that the joinder of defendants and counts is prejudicial.

Taylor contends that severance from Thomas is required because (1) the two defendants have irreconcilable defenses and markedly different degrees of culpability; (2) potential for evidentiary spillover; (3) availability of exculpatory evi-

1. Defendant Taylor is charged in Count 4 of felon in possession of a firearm, whereas Defendant Thomas is charged as a felon in possession in Counts 5 and 6.

dence; and (4) each defendant is entitled to an individualized sentencing hearing and that the defendants' mitigation cases are legally and factually irreconcilable. Furthermore, Taylor requests that the count charging him with the crime of felon in possession be tried separately from the other counts for which he is charged.

In his Motion for Severance, Thomas asserts many of the same arguments in favor of severance as his co-defendant. Specifically, he argues that severance is necessary due to the fact that (1) the introduction of numerous statements made by co-defendants would constitute *Bruton* violations; (2) antagonistic defenses; and (3) the requirement of individualized treatment during the capital sentencing phase. Likewise, Thomas also seeks the counts charging him with being a felon in possession of a firearm be severed from the other crimes he is charged with committing.

The Government opposes the Defendants' requests for severance and asserts that the defendants and counts were properly joined and that neither Taylor nor Thomas have demonstrated the requisite showing of actual prejudice to warrant severance. The Government maintains that the Defendants arguments of antagonistic defenses, *Bruton* problems, spillover, exculpatory evidence, and the risk to individualized treatment in the sentencing phase are without merit and insufficient to require severance. Furthermore, the Government points to the presumptions that favor joint trials, including the interests in judicial economy and the protection of the interests of the witnesses, victims, and the public.

## I. Severance of Defendants

 Federal Rule of Criminal Procedure 8(b) allows the joinder of two or more defendants in a single trial.[2] There is a preference in the federal system for joint trials of defendants who are indicted together, particularly co-conspirators where the conspiracy charged may be proved by evidence that arises out of the same act or series of acts. *United States v. Williams,* 31 F.3d 522, 528 (7th Cir.1994)("the efficiencies involved in trying members of the same conspiracy together has led to the presumption in favor of a joint trial for co-conspirators"); *United States v. Lopez,* 6 F.3d 1281, 1285 (7th Cir.1993)(same); *United States v. Diaz,* 876 F.2d 1344, 1356 (7th Cir.1989)(same). Joint trials promote efficiency and go far to prevent the scandal and inequity of inconsistent verdicts among co-defendants. *Zafiro v. United States,* 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993); *see also Richardson v. Marsh,* 481 U.S. 200, 209, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176 ("[j]oint trials generally serve the interest of justice by avoiding inconsistent verdicts and enabling a more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit"). Specifically, the Seventh Circuit has explained the policy underlying the rule favoring joint trials for those charged as co-conspirators as follows:

> "Joint trials reduce the expenditures of judicial and prosecutorial time; they reduce the claims the criminal justice system makes on witnesses, who need not return to court for additional trials; they reduce the chance that each defendant will try to create a reasonable

**2.** Rule 8(b) provides:

Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

doubt by blaming an absent colleague even though one or the other (or both) undoubtedly committed a crime. The joint trial gives the jury the best perspective on all the evidence and therefore increases the likelihood of a correct outcome."

*Diaz,* 876 F.2d at 1357 quoting *United States v. Buljubasic,* 808 F.2d 1260, 1263 (7th Cir.1987), *cert. denied,* 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987).

■ However, Federal Rule of Criminal Procedure 14 provides that a court may sever co-defendants' trials if a defendant or the government is prejudiced by such a joinder.[3] Working together, "Rules 8(b) and 14 are designed 'to promote economy and efficiency and to avoid a multiplicity of trials, [so long as] these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial.'" *Id.* at 540, 113 S.Ct. 933 (quoting *Bruton v. United States,* 391 U.S. 123, 131, n. 6, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (further internal quotations omitted)).

■ Rule 14 leaves the determination of risk of prejudice from a joint trial and any remedy that may be necessary to the sound discretion of the district court. *Id.* at 539, 113 S.Ct. 933. A court should grant a severance under Rule 14 only if "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* A defendant is not entitled to a separate trial simply because he might have a better chance of acquittal if tried alone. *Id.* at 540, 113 S.Ct. 933. A serious risk that may warrant severance occurs, for example, when a co-defendant's exculpatory testimony is unavailable to a

defendant if tried with that co-defendant, *id.* at 539, 113 S.Ct. 933, or when a defendant cannot adequately cross-examine a hearsay declarant, *Bruton,* 391 U.S. at 126, 88 S.Ct. 1620. However, mutually antagonistic theories of defense do not *per se* pose a risk of unfair prejudice that requires severance. *Zafiro,* 506 U.S. at 538, 113 S.Ct. 933. This is because many times potential prejudice to a defendant may be neutralized by a limiting instruction to the jury, thereby avoiding the need for severance. *Id.* at 539, 113 S.Ct. 933.

■ The Court's discretion with respect to severance is constrained to some degree by the fact that this is a capital case. Because a defendant's life hangs in the balance, Eighth Amendment jurisprudence dictates that a capital case has a heightened need for reliability and requires vigilant protection of each defendant's constitutional right to an individualized sentencing decision. *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Woodson v. North Carolina,* 428 U.S. 280, 304–05, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (plurality). Thus, the Court must exercise its discretion to sever capital co-defendants' trials with these considerations in mind. Nevertheless, the mere fact that a case may result in the death penalty does not require severance at the guilt or penalty phases of trial. *See, e.g., United States v. Bernard,* 299 F.3d 467 (5th Cir.2002); *United States v. Causey,* 185 F.3d 407 (5th Cir.1999), *cert. denied,* 530 U.S. 1277, 120 S.Ct. 2747, 147 L.Ed.2d 1010 (2000); *United States v. Tipton,* 90 F.3d 861 (4th Cir. 1996).

---

**3.** Rule 14 provides, in pertinent part:
 If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together,

the court may order an election or separate trial of counts, grant a severance of defendants or provide whatever other relief justice requires.

### A. *Guilt Phase*

#### 1. *Mutually Antagonistic Defenses*

Thomas claims that severance is necessary as he believes that Taylor will attempt to shift blame to him, and *vice versa*, thereby rendering their respective defenses mutually antagonistic. Thomas surmises that it would be the goal of Styles Taylor to demonstrate to the jury that it was Thomas that committed the murder. Likewise, Thomas acknowledges that he will do his best to demonstrate to the jury that Styles Taylor was the shooter. Thomas points to various pieces of evidence that each defendant could present that would bolster their individual defenses. For example, Thomas theorizes that Taylor will seek to introduce evidence that establishes that Thomas possessed the murder weapon, had fled to Minneapolis with the weapon, was in possession of guns stolen from the store, and owned the car that was used in the commission of the crime. Thomas concedes that this evidence will likely all be elicited by the Government, but postulates that Taylor's strategy will be to bolster and reargue the Government's case. Likewise, Thomas intimates that his own trial strategy will be to point the finger at Taylor as the shooter and will highlight evidence against Taylor as well as seek to introduce statements made by Taylor and others.

In his Motion for Relief from Prejudicial Joinder, Taylor argues that he and his co-defendant have irreconcilable defenses and thus, each defendant will act as a second prosecutor and will be the other defendant's most forceful adversary. Taylor does not offer any specific evidence or defense that leads the Court to conclude that in fact he and Thomas have adversarial defenses. Rather, Taylor submits general conclusory statements that the defendants' defenses are irreconcilable and prone to prejudice thereby necessitating severance.

 Defenses are considered to be mutually antagonistic where, "the jury's acceptance of one defense precludes any possibility of acquittal for the other defendant." *United States v. Mietus*, 237 F.3d 866, 873 (7th Cir.2001). As noted above, mutually antagonistic theories of defense do not *per se* pose a risk of unfair prejudice that requires severance. *Zafiro*, 506 U.S. at 538, 113 S.Ct. 933.[4] Conflicting theories of defense warrant severance only if they create "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539, 113 S.Ct. 933; *Mietus*, 237 F.3d at 873.

 Neither Thomas nor Taylor have demonstrated to the Court's satisfaction that the finger-pointing that may go on among the defendants in this case would compromise a specific trial right of either defendant. Neither has provided enough specifics to show that the defendants' defenses would be truly antagonistic. Thomas posits that Taylor will paint him as the shooter whereas Thomas submits that his defense will be that Taylor was the shooter and that he (Thomas) had nothing to do with it. Beyond general statements of assumption, Thomas has not presented the

---

4. In his Reply, Thomas contends that nature and degree of the antagonism that exists between he and Taylor transcends what is permissible under *Zafiro*. However, Thomas does not elaborate on how or why the case at bar transcends *Zafiro* beyond the fact that this is a capital case. As noted earlier, this Court recognizes that Eighth Amendment jurisprudence dictates that a capital case has a heightened need for reliability and requires vigilant protection to each defendant's constitutional rights, this alone does not require severance.

Court with any specifics as to what his defense will be and how it is inconsistent with Taylor's.

As for Taylor, he has not explained sufficiently how their respective defenses at the guilt phase would conflict either. Taylor submits that the Government's evidence indicates that Freund was shot twice, that both rounds were fired from the same weapon and that this evidence gives rise to the inference that only one person shot Freund. Based on that, Taylor claims that each defendant's defense will clash as each will claim the other was the triggerman. However, the Government indicated in its Response that it intends to present evidence that both Taylor and Thomas shot Freund.[5] Neither Thomas nor Taylor have met their burden to show that their defenses are mutually antagonistic—that is, that a jury's acceptance of one of their defenses precludes the possibility of acquittal of the other.

At the sentencing phase, as discussed below, the Court is convinced that the defendants' Eighth Amendment rights to reliable and individualized consideration will be adequately protected by limiting instructions to the jury.

The Court finds that neither Thomas nor Taylor have pointed to any other specific trial right that they believe would be compromised by the defendants' presentation of their respective defenses. Furthermore, the Court finds that a jury will be able to make a reliable judgment about the individual defendants' innocence or guilt in this matter. Accordingly, the Court finds that severance at the guilt phase is not warranted based on mutually antagonistic defenses.

### 2. *Spillover Effect*

In his Motion, Taylor argues that severance of defendants is required in this case in order to prevent a spillover effect with the evidence that would prevent the jury from making a reliable judgment regarding the varying degrees of culpability of the defendants. Taylor contends that without separate trials, the Government will offer evidence against Keon Thomas that it hopes will transfer to Taylor. Taylor lists the evidence that he expects the Government will introduce against Thomas and against him. According to Taylor, the evidence against Thomas includes: he owned and was in possession of the same type of gun used in the murder; he fled the state; his car was used in the robbery; he sold guns stolen in the robbery; and is believed to have made statements admitting to committing the murder. Taylor goes on to list the evidence that he believes will be introduced against him, including: Taylor's admission that he was at the crime scene, but not in the gun shop; witnesses will testify that he admitting to the killing; that he did not flee to another state; and that he sold one of the stolen weapons.

In listing the evidence expected to be presented against he and Thomas, Taylor appears to be attempting to show a discrepancy in evidence between the two defendants in order to bolster his argument that without separate trial, the jury will consider the evidence presented against Thomas, against Taylor.

In Response, the Government states that Taylor's concern regarding spillover of evidence is without merit. The Government points to the fact that Taylor and Thomas are charged together as co-conspirators with the robbery and subsequent

---

**5.** In its Response, the Government states that in his proffer statement, Williams stated that both Taylor and Thomas fired a shot—that they both shot the victim, one after another—so that they would have incentive not to tell on one another.

murder at Firearms Unlimited and therefore, because of the conspiratorial nature of the illegal activity, evidence presented at a joint trial to prove conspiracy, even evidence relating to criminal acts of a co-defendant, is admissible against the defendant, and would be admissible were the defendant separately tried.

 The Seventh Circuit has held a defendant's claim that the evidence against his co-defendant is proportionally greater than the evidence against him is not itself grounds for a severance. *United States v. Diaz*, 876 F.2d 1344, 1357 (7th Cir.1989). In order to successfully move for severance of defendants based on a claim of spillover evidence a "defendant must rebut the dual presumptions that a jury will (1) capably sort through the evidence and (2) follow instructions from the court to consider each defendant separately." *Lopez*, 6 F.3d at 1286; *Diaz*, 876 F.2d at 1358("relevant inquiry is whether it is within the jury's capacity to follow the trial court's limiting instructions requiring separate consideration for each defendant and the evidence admitted against [him]"). "Mere speculation of 'spillover guilt' is not enough to rebut these twin presumptions." *Lopez*, 6 F.3d at 1286. It is well-established that "juries are presumed capable of sorting through the evidence and considering the cause of each defendant separately." *Id.* quoting *United States v. Williams*, 858 F.2d 1218, 1225 (7th Cir. 1988); *see also Opper v. United States*, 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 ("[t]o say that the jury might [be] confused amounts to nothing more than an unfounded speculation that jurors [disregard] clear instructions of the court . . . .[o]ur theory of trial relies upon the ability of a jury to follow instructions").

 The Court finds Taylor's argument to be unpersuasive. First, the Court does not find there to be much of a disparity between the evidence that can be ex-pected to be introduced against Taylor and Thomas. Second, limiting instructions to the jury directing them to consider each defendant separately will provide sufficient protection to Taylor from any potential prejudice accompanying a joint trial with Thomas. Lastly, Taylor ignores the fact that he and Thomas have been charged as co-conspirators and that evidence of Thomas' conduct, as part of the conspiracy, would be admissible in a separate trial of Taylor for conspiracy in the robbery and murder. *Diaz*, 876 F.2d at 1358.

Taylor has not demonstrated that any tendency toward "spillover" of evidence between the defendants cannot be avoided through frequent instructions to the jury to give he and Thomas separate consideration. For these reasons the Court finds that severance is not warranted for the guilt phase of the trial based on the risk of evidentiary spillover.

### 3. *Availability of Exculpatory Evidence*

 Defendant Taylor asserts that severance is required based on his inability to secure exculpatory evidence in a joint trial that would be available if he were tried alone. Taylor asserts that a statement made by Adam Williams in which Williams acknowledges his own role in the crime charges as well as the role of Keon Thomas. Taylor maintains that William's statements necessitates severance because Williams would be "unavailable" at trial since he is a charged defendant and therefore cannot be forced to the stand to testify—thus, as Taylor posits, imperiling either Williams' Fifth Amendment protection against self-incrimination or Taylor's right to offer exculpatory evidence. Taylor argues that under the holding of *Bruton* he should be granted a severance in order to allow him to offer exculpatory evidence.

The statement at issue is contained within a Rule 11 proffer statement given to the government by Williams in January, 2002. According to the Government, the statement was tendered to the defense as part of their § 3500 disclosures. In the proffer, Williams states that Thomas admitted to shooting Freund as well as implicates himself in his role in the crimes charged.

However, as the Government lays out in its' Response, Taylor's argument is flawed in a number of ways. First, the statement does nothing to either implicate or exonerate Taylor. Second, the argument is rendered moot by the fact that Williams is no longer "unavailable" to be called as a witness since subsequent to the filing of Taylor's Motion and Supplemental Memorandum, Williams has pled guilty.

For the foregoing reasons, the Court finds that severance of Defendants Taylor and Thomas during the guilt phase of the trial is not warranted on the grounds that Williams may provide exculpatory evidence for Taylor since Williams is no longer "unavailable" and therefore, Taylor's argument is moot.

### 4. *Inability to Cross–Examine Hearsay Declarants*

The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant to be confronted with the witnesses against him. The right of confrontation includes the right to cross-examine witnesses. *Richardson v. Marsh*, 481 U.S. 200, 207, 107 S.Ct. 1702, 1706–1707, 95 L.Ed.2d 176 (1987). Thus, "where two defendants are tried jointly, the pretrial confession of one cannot be admitted against the other unless the confessing defendant takes the stand." *Id.* In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the U.S. Supreme Court held "that a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a non-testifying co-defendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the co-defendant." *Id.; Richardson*, 481 U.S. at 207, 107 S.Ct. at 1707. Indeed, it is well-settled that severance is proper where the government intends to use a co-defendant's hearsay confession against him but where admission of that confession in the trial of another co-defendant would violate that co-defendant's right to confront witnesses against him. *Id.* However, if the declarant's hearsay statement is admissible against the co-defendant and does not violate the co-defendant's Confrontation Clause rights, the trial need not be severed. Thus, the first question is whether the declarant's hearsay statement is admissible under the hearsay rules, and the second question is whether the admission of the declarant's statement violates the Confrontation Clause. *United States v. Westmoreland*, 240 F.3d 618, 626 (7th Cir. 2001).

Even if a hearsay statement is admissible under the Federal Rules of Evidence, it may still violate the Confrontation Clause. A hearsay statement does not violate the Confrontation Clause if it is admissible under a firmly rooted exception to the hearsay prohibition. If the statement does not fall under a firmly rooted exception the hearsay statement must be accompanied by particularized guarantees of trustworthiness. *Id.* (citing *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)). The particularized guarantees must be inherent to the testimony and not from other corroborating evidence. *Id.* (citing *United States v. Castelan*, 219 F.3d 690, 695 (7th Cir.2000)). The Supreme Court has suggested that such particularized guarantees of trustworthiness are not present when hearsay

statements against penal interest are made in custody to law enforcement officers, *id.* (citing *Castelan,* 219 F.3d at 695) or when hearsay statements are purely blameshifting, *id.* at 628.

■ In support of his Motion for Severance, Thomas states that the admission of statements made to law enforcement officials by Taylor, Damione Thomas, and Adam Williams, and statements made to other non-law enforcement individuals by Taylor, would violate *Bruton* and therefore necessitate severance. As noted earlier, at the time the filing of Thomas and Taylor's motions, Williams and Damione Thomas were still co-defendants. They have since pled guilty and have agreed to testify if requested by the Government. As a result of their pleas of guilty, they are no longer co-defendants in this trial and therefore there are no *Bruton* issues that exists as to either Williams or Damione Thomas.

Thomas points to two statements made by Taylor which inculpate Thomas. Thomas argues that, although those statements would be admissible against Taylor, admission of the statements a joint trial would violate his (Thomas) rights under the Confrontation Clause of the Sixth Amendment. Thus, he believes his trial should be severed from Taylor's trial.

The Court will examine each of Taylor's statements in turn to see if they are admissible and if so, whether the admission of either statement would violate Thomas' Confrontation Clause rights.

### a. *Taylor's April 12, 2000 Statement*

According to Thomas's Motion, Taylor made a statement on April 12, 2000, to a Hammond Police Detective in which he stated: "off the record ... If I were you, I would be looking at Keon for the murder of the old man ... they [explicative] up ya see ... they sold all the guns to the boys in their own hood. If it was me, I would have sold all of them guns to one guy ... not nobody I knew."

■ This hearsay statement of Taylor's is not admissible. It has long been held that Rule 804(b)(3) of the Federal Rules of Evidence "does not allow the admission of a non-self-inculpatory statement, even if they are made within the broader narrative that is generally self-inculpatory." *Williamson v. United States,* 512 U.S. 594, 600–601, 114 S.Ct. 2431, 2435, 129 L.Ed.2d 476 (1994). There is nothing about Taylor's April 12, 2000 statement that is self-inculpatory that would allow it to be admitted in any manner as a statement against penal interest or any other exception to the bar against hearsay. The Government acknowledges as much in its Response and states that it will not seek to introduce this statement in its case in chief due to the fact that the statement is not sufficiently reliable to be admissible.

### b. *Taylor's April 19, 2000 Statement*

■ The second statement that Thomas points to is the Taylor's Rule 11 proffer statement. According to Thomas's Motion, Taylor statement to the authorities included the following assertions: (1) that Thomas had discussed committing the robbery of the gun shop and that he (Thomas) was in need of money; (2) Thomas told Taylor that he was going to trade come guns for dope; (3) that Taylor drove Thomas to Firearms Unlimited; (4) Thomas went into the shop, came back out with a box of bullets and told Taylor that he could commit the robbery and that there was only one person in the store; (5) Taylor drive away and Thomas loaded a 9mm Glock; (6) Thomas and Taylor returned to the shop—Thomas entered the shop while Taylor waited outside and urinated on the side of the store; (6) Thomas

came out of the store, got in the driver's seat of the car and took off with Taylor; (7) Thomas told Taylor that the man in the store was "reaching on me so I had to pop him"; and (8) that Thomas had a bag with about eleven guns in it and that they drove to Gary where they met Adam Williams.

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, any statement made in the course of plea discussions is inadmissible against the defendant who made the plea or was the participant in the plea discussions. Federal Rule of Evidence 410(4) provides the following exceptions to the rule against admitting pleas, plea discussion or related statements:

"[S]uch statement is admissible (i) in any proceeding wherein another statement made in the course of the plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it; or (ii) in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record and in the presence of counsel.

In the case at bar, neither of these exceptions apply to Taylor's proffer. In its Response, the Government submits that the Taylor's proffer would be inadmissible against Taylor unless he testifies or presents evidence or a theory of defense contrary to the substance of the proffer. Without more information as to the circumstances of Taylor's plea negotiations and whether a proffer agreement was made, the Court declines to rule on the admissibility of this statement against Taylor if he presents a defense that contradicts the contents of the proffer. However, in the event that the Court did allow the statement to be used against Taylor for that limited purpose, the Court finds that the statement could be redacted pursuant to *Richardson* to exclude any and all reference to Thomas. *See Richardson v. Marsh*, 481 U.S. 200, 209, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176("the Confrontation Clause is not violated by the admission of a non-testifying co-defendant's confession with a proper limiting instruction when ... the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence.")

For the foregoing reasons, the Court finds that severance of the defendants during the guilt phase of the trial is not warranted on the grounds that Thomas's Confrontation Clause rights would be violated by introduction of Taylor's statements since these statements are inadmissible. Further, the Court is confident that should any statements come to light at trial that implicate any defendant's Confrontation Clause rights, those problems can be remedied by redaction or can be excluded from the trial.

### 5. *Right to Heightened Reliability and Individualized Consideration*

Taylor and Thomas also broadly proclaim many legal principles regarding capital defendants' rights to a heightened level of reliability and an individualized sentencing decision. *See Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Woodson v. North Carolina*, 428 U.S. 280, 304–05, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (plurality). They argue that limiting instructions will be insufficient to ensure that these principles are observed. Aside from the reasons discussed above, they do not, however, attach these principles to any specific argument about why *in this particular case* joinder of all defendants at the guilt phase would violate those principles.

To the extent that Taylor or Thomas argues generally that a "spillover" of evi-

dence from the guilt phase will prejudice him in the penalty phase, the Court finds such risk insufficient to warrant severance.

For these reasons, the Court finds that severance is not warranted for the guilt phase of the trial based on concerns of reliability and individualized consideration and that both defendants can receive a fair trial if tried jointly. The Court finds that severance of defendants, either at the guilt or penalty phase, is not required, but that it is advisable at the penalty phase to ensure reliable and individualized penalty decisions.

### B. Sentencing Phase

Even if severance is not warranted based solely on concerns during the guilt phase of the trial, it may be warranted because of concerns during the sentencing phase that can only be alleviated by severance at all phases of the trial. In federal capital cases, defendants found guilty are entitled to a separate sentencing hearing to determine the punishment to be imposed. 18 U.S.C. § 3593(b). With few exceptions, the hearing must be conducted before the same jury that determined the defendant's guilt.[6] Id.; United States v. Tipton, 90 F.3d 861, 892 (4th Cir.1996).

The question before the Court now is whether the same jury can fairly decide the punishment for both defendants should this case proceed to the sentencing phase. If not, the requirement of the same jury for the guilt and penalty phases requires separate juries for both phases. If the Court finds that the same jury can fairly decide the punishment for all defendants, the Court must then determine whether that jury should hear the penalty phase for all defendants at the same time or consecutively.

Taylor and Thomas believe that the same jury cannot fairly decide the punishment for all defendants due to antagonistic theories of mitigation. However, neither Taylor nor Thomas point to any actually antagonistic theories of mitigation that might be presented by either defendant in this case.

Taylor and Thomas both argue that their due process rights would be violated because they would not have notice of the evidence their co-defendants may use to make him look worse to the jury and therefore would not have an adequate opportunity to subject the evidence to testing by the adversarial process.

Taylor and Thomas also argue that a jury will not be able to properly weigh contrasting mitigation theories or to keep such theories separate for each defendant. This is especially true, they claim, in light of the statutory mitigating factors that allow comparisons to equally culpable defendants in the same crime who did not receive the death penalty, 18 U.S.C. § 3592(a)(4),[7] or comparisons of defendants' roles in the offense, 18 U.S.C. § 3592(a)(3). In addition, they argue that the jury's confounding of theories might cause a mitigating factor such as mental illness to be converted into an aggravating factor under the guise of "future dangerousness." The negative perspective of mental illness—potential future instability that could not be controlled in prison—

---

6. The exceptions to this general rule—where the defendant pled guilty, the defendant was convicted in a bench trial, the guilt phase jury was discharged for good cause, the sentence is being reconsidered or the defendant requests, with the government's approval, the Court to determine his punishment—do not apply in this case. § 3593(b)(2) & (3).

7. Thomas erroneously asserts that "equal culpability" extends beyond the circumstances of the charged crime to include "the likelihood of future dangerousness, moral desert, life history and other factors unrelated to the crime itself." The plain language of the statute indicates otherwise, referring to defendants who are "equally culpable in the crime."

would be highlighted by another defendant's presentation of his own mental stability as a characteristic that would minimize future dangerousness. Similarly, Taylor and Thomas share the concern that a co-defendant's remorse expressed during his allocution at sentencing or other cooperation may highlight another defendant's decision to exercise his Fifth Amendment right to remain silent or not to cooperate, and may work to convert that silence or non-cooperation into self-incriminating evidence in the eyes of the jury.

The Government, on the other hand, argues that jury instructions to consider each defendant separately will safeguard the defendants' rights to reliable and individualized consideration. The government also believes it would be unfair to require it to present essentially the same guilt phase case multiple times. Each presentation requires more time, exhausts more court and prosecution resources and risks witness safety where evidence suggests witnesses and their families may already be in danger for their lives.

■ The Court believes that the same jury can fairly decide the punishment for both Taylor and Thomas should they both be found guilty. The Court is aware that consideration of each defendant's punishment by the same jury risks violating the defendants' constitutional guarantees of reliable and individualized consideration of their particular situations. However, the Court firmly believes, based on its own experience with hundreds of juries, that juries are able to follow limiting instructions and give separate consideration to each defendant. *See, e.g., Richardson v. Marsh,* 481 U.S. 200, 206–07, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) (recognizing "the almost invariable assumption of the law that jurors follow their instructions"); *United States v. Miller,* 276 F.3d 370, 375 (7th Cir.2002) ("We presume that juries follow instructions."). That this is a capital

case does not detract from the Court's faith in the jury. *See United States v. Tipton,* 90 F.3d 861, 892–93 (4th Cir.1996). Thus, the Court will take every reasonable opportunity in this case to instruct the jury to consider each defendant separately. The Court is confident that such precautions will eliminate any intolerable prejudice to a defendant from a joint trial.

The Court is also mindful of the unavoidable inefficiencies that would result from concluding that the same jury could not fairly decide the punishment for all defendants. It is proper for the Court to consider such factors when making a severance decision. *Tipton,* 90 F.3d at 892. As noted above, because of the requirement that the same jury hear the guilt and penalty phases, separate juries for each defendant's penalty phase would require separate guilt phase trials as well. At last count the parties estimated that this case would take as many as 6–7 weeks to try, not including jury selection. Conducting such a proceeding twice would tax court, prosecution and law enforcement resources. Furthermore, because the alleged crimes are so intertwined (the murder alleged in Count 3, the robbery alleged in Count 2, along with the felon in possession counts, are alleged to be overt acts in furtherance of the conspiracy charged in Count 1) the two trials would be highly repetitive and would include essentially the same evidence in each case. In addition, evidence presented by the government with its response indicates that certain witnesses may be in danger from the defendants or their allies. Protracted litigation would increase the chances that witnesses would be intimidated by the perceived danger to them and their families and become unwilling to testify.

Taking all these factors into consideration, the Court is convinced that the same jury should decide the penalty phase for each defendant. The Court believes, how-

ever, that the benefits of consecutive sentencing hearings before the same jury outweigh the costs of such hearings. First, consecutive sentencing hearings at which the cases for and against one defendant are presented and after which the jury deliberates only on the sentence to be imposed on that one defendant will facilitate the jury's individualized consideration of each defendant. Co-defendants' counsel will not be allowed to participate in the sentencing hearings of other defendants. Therefore, the chance that a co-defendant's counsel will turn into a prosecutor or that the defendant will be faced with evidence of which he did not know before trial will be minimized. Finally, consecutive penalty hearings before the same jury will not be extremely repetitive. The jury will likely already have heard in the guilt phase the government's evidence and the defendants' adversarial testing of that evidence in support of the *mens rea* finding required by 18 U.S.C. § 3591(a)(2) and the statutory aggravating factors involving the alleged heinous, cruel or depraved manner of committing the offense, 18 U.S.C. § 3592(c)(6), the alleged motive of pecuniary gain, 18 U.S.C § 3592(c)(8), and the alleged substantial planning and premeditation prior to committing the offense, 18 U.S.C. § 3592(c)(9). The jury is also likely to have already heard evidence regarding the non-statutory aggravating factors. Thus, the additional evidence required to prove these factors at the penalty phase is likely to be minimal.

The remaining aggravating factors, such as Defendants' previous convictions of vio-

lent felonies involving firearms, 18 U.S.C. § 3592(c)(2), and Defendant's future dangerousness, and presumably the mitigating factors to be presented by each Defendant are likely to be different for each defendant based on that defendant's particular background and circumstances. Thus, with one exception, the presentation of these factors will be extremely individualized and will not be highly repetitive in separate hearings. The one exception relates to each defendant's future dangerousness. It is likely that the government will have to present in each penalty hearing the same evidence about the capabilities of the Bureau of Prisons to control prisoners and will have to subject its expert to cross-examination by each defense counsel. Nevertheless, the Court finds that this is a small price to pay in order to further ensure individualized consideration by the jury of each defendant's punishment.

## II. Severance of Counts

In addition to severance from one another, both Thomas and Taylor seek severance of counts charging them with the crime of felon in possession of a firearm from the other crimes for which they are charged. Specifically, Taylor requests that Count 4, possession of a firearm by a felon, be severed from the other charges. Similarly, Thomas moves to have Count 5, in which he is charged with possession of a firearm as a felon, be severed from the remaining counts for which he is charged.[8]

 Federal Rule of Criminal Procedure 8(a) allows joinder of multiple offenses in a single trial.[9] Offenses are

---

**8.** The Superseding Indictment added, as Count 6, a second additional felon in possession count against Thomas. Thomas' "Motion to Sever" was filed prior to the return of the Superseding Indictment and therefore does not reference Count 6. The Court considers Thomas' request to include severance of both felon in possession charges contained in

Counts 5 and 6 from the remaining counts for which he is charged.

**9.** Rule 8(a) provides:
Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar

properly joined under Rule 8(a) if they are similar, are based on the same act or transaction or are based on different acts or transactions that are connected or part of the same scheme or plan. Whether charged offenses fit into these categories is determined by the face of the indictment, not the evidence adduced at trial. *United States v. Coleman*, 22 F.3d 126, 134 (7th Cir.1994). In addition, Rule 8(a) "should be broadly construed in order to increase judicial efficiency and to avoid costly and duplicative trials." *United States v. Freland*, 141 F.3d 1223, 1226 (7th Cir.1998). Overt acts of a conspiracy are part of "the same act or transaction ... constituting parts of a common scheme or plan" as the conspiracy and are thus properly joined with the conspiracy under Rule 8(a). *See United States v. Thompson*, 286 F.3d 950, 967–68 (7th Cir.2002) (citing *United States v. Curry*, 977 F.2d 1042, 1049 (7th Cir. 1992)). Likewise, "courts also have a strong interest in favor of joinder of offenses; in particular joinder of offenses reduces the waste of precious judicial and prosecutorial time in the already overburdened federal system and reduces the burdens on the witnesses from testifying at multiple trials." *United States v. Stokes*, 211 F.3d 1039, 1042 (7th Cir.2000).

As noted earlier, neither Taylor nor Thomas claim that the counts have been improperly joined, rather they individually contend that the introduction of evidence of their prior felony records will prejudice each of them on the other counts against them. Specifically, Thomas and Taylor argue that there will be an inevitable spillover effect on the other charges with the introduction of evidence regarding their prior felony convictions that such introduction will be sufficiently inflammatory to sway a jury to convict him of the other charges even if the evidence does not support those other charges.

In its Response, the Government rejects each of Defendants' arguments regarding severance of the felon in possession counts from the other counts charged in the Second Superseding Indictment and contends that joinder of all counts is proper under Rule 8(a) because Counts 4, 5 and 6 are charged in the Second Superseding Indictment to be overt acts of the murder/robbery conspiracy contained in Counts 1, 2 and 3. The Government states that the guns that the defendants are charged with possessing are the same firearms that either were stolen in the murder/robbery or used to commit the murder/robbery of Frank Freund.[10] Moreover, the Government alleges that Taylor and Thomas committed the robbery and murder in order to obtain firearms so that those firearms could be sold for cash, bartered for other items of value, used by Taylor and Thomas as protection during sales of narcotics, and for the purpose of obtaining firearms for Taylor and Thomas—both convicted felons prohibited from legally obtaining firearms. Thus, the Government argues, the firearms are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan and therefore properly joined as provided by Rule 8(a) of the Federal Rules of Criminal Procedure.

Additionally, the Government contends that severance of the felon in possession

---

character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

**10.** Counts 4 and 5 charge Taylor and Thomas, respectively, with possession of an Intratech 9mm stolen during the murder/robbery as charged in Count 3 of the Second Superseding Indictment. Count 6 charges Thomas with possession of a Glock 9mm, the weapon believed to have been used in the murder/robbery.

counts would be pointless since the evidence of the felony convictions would be admissible at trial as "other crimes" evidence, pursuant to Rule 404(b) Federal Rules of Evidence, for the purpose of establishing both the motive to commit the crime (Taylor and Thomas were unable to obtain firearms legally) and additionally, as to Thomas, preparation of the crime (his procurement and possession of the alleged murder weapon). Lastly, the Government asserts that any prejudice that Defendants may be subject to could be remedied by having Defendants stipulate as to their prior felony convictions—so as to prevent the jury from being presented the details of prior convictions—as well as proper instructions for the jury from the Court in order to insulate Defendants from any potential prejudice by having their prior felony records presented to the jury.

The Court agrees with the Government, and finds that the felon in possession counts have been properly joined with the remaining counts in the Second Superseding Indictment. Further, the Court rejects Defendants' evidentiary spillover arguments in favor of severance of the felon in possession counts. *See United States v. Abdelhaq*, 246 F.3d 990, 992 (7th Cir.2001) ("as a basis for requiring severance, 'evidentiary spillover' has been rejected.")

Both Taylor and Thomas seem to ignore that they can alleviate any prejudice arising from introduction of evidence regarding their previous felony convictions stipulating to their prior felony convictions. *Stokes*, 211 F.3d at 1042–43; *see also Old Chief v. United States*, 519 U.S. 172, 174, 117 S.Ct. 644, 647, 136 L.Ed.2d 574 (1997)(abuse of discretion found where trial court refused defendant's offer to stipulate as to defendant's prior felony conviction). Such stipulation would be sanitized

of the words "felon" or "felony," as well as the details of their individual crimes.[11] Furthermore, the Court will work to insulate both Taylor and Thomas from any prejudice for their prior felony convictions by properly instructing the jury to consider each Defendant's criminal history for the sole and limited purpose of that Defendant's felon is possession of a firearm count.

Furthermore, as noted earlier in this order, juries are presumed to follow limiting instructions. *See, e.g., Richardson v. Marsh*, 481 U.S. 200, 206–07, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) (recognizing "the almost invariable assumption of the law that jurors follow their instructions"); *United States v. Miller*, 276 F.3d 370, 375 (7th Cir.2002) ("We presume that juries follow instructions."). Thus, a jury instruction to give separate consideration to separate counts is "an adequate safeguard against the risk of prejudice in the form of jury confusion, evidentiary spillover and cumulation of evidence." *United States v. Alexander*, 135 F.3d 470, 478 (7th Cir. 1998) (internal quotations omitted). Taylor has not proven to the Court's satisfaction that the jury could not follow such a limiting instruction and that, if a limiting instruction is given, that his trial will be unfair if Count 4 is not severed from Counts 1, 2, and 3. Similarly, Thomas has failed to do the same with regards to Counts 5 and 6. Thus, the Court declines to sever these counts due to the danger of evidentiary spillover.

### CONCLUSION

For the foregoing reasons, the Court hereby:

- **GRANTS in part** and **DENIES in part** Thomas' and Taylor's motions for severance. The motions are granted

---

11. For example, the Defendants and the Government could agree to a stipulation which reads, in part, as follows: "prior to March 20, 2000, the defendant had been convicted of a crime punishable by a term of imprisonment of more than one year."

to the extent that they request separate penalty phase hearings before the same, single jury used in the guilt phase hearing, assuming all defendants are found guilty in the guilt phase hearing, and are denied in all other respects;

- **ORDERS** that the defendants shall confer among themselves in an attempt to agree to the order in which the penalty phase hearings will be held, assuming both defendants are found guilty in the guilt phase hearing. The Court further **ORDERS** the defendants to notify the Court on or before December 23, 2003, of their unanimous decision. If they are unable to reach agreement, the Court will determine the order of the severed penalty phase hearings;

- **DENIES** Defendant Thomas' Motions to Sever Counts Five and Six; and

- **DENIES** Defendant Taylor's Request for Severance of Count Four.

**SO ORDERED.**